[File No. 6730]

DAVID HAMILTON, Respondent, v. CITY OF BISMARCK, a
Municipal Corporation, Appellant.

(300 NW 631)

Opinion filed November 5, 1941

*Hyland & Fosler,* for appellant.

*Murray & Murray,* for respondent.

MORRIS, J.   This is an action for damages to plaintiff's property

resulting from the overflow of a sanitary sewer through a manhole outlet.

In 1938, the plaintiff and his wife purchased, by contract for deed, a tract of land in the Park Hill Addition to the city of Bismarck. Plaintiff resides on this tract which consists of about one-half acre of land. The main sanitary sewer of the city passes through Park Hill Addition on its way to the Missouri River where the sewage is discharged. Plaintiff's lot, as well as the land surrounding it, is approximately level. A manhole is located about 25 feet from the corner of plaintiff's lot and about 100 feet southwest of his house. The top of the manhole is substantially level with the surrounding ground. It has a 24 inch iron cover that is not fastened down. The manhole is about 4 feet deep. The sewer was laid before the present Park Hill Addition was platted. The property through which the sewer was constructed was a part of section five (5), township one hundred thirty-eight (138), range eighty (80) and at the time of construction in 1923 was owned by I. P. Baker. Baker and the city entered into a written agreement which was recorded in the office of register of deeds of Burleigh county on April 25, 1923. It provides in part, "That said party of the first part, in consideration of the right and privilege herein granted to it to construct, as herein provided, and to maintain said sewer, hereby covenants and agrees to and with the said second party, his heirs and assigns, that at each and every manhole in said sewer as the same may be finally constructed through said Section Five (5), (and there shall not be less than six (6) manholes so constructed), to construct and maintain an opening or outlet controlled by a suitable valve or gate, for the purpose of permitting the water or sewage to escape from said sewer, or to be drawn therefrom if so desired, and at a grade sufficiently low to enable the contents of such 'Main Sewer' to be exhausted through such valves or gates; and that the said party of the second part has the right and the same is granted to him, his heirs and assigns, and such privilege will run with the title to that portion of the said Section Five (5) now belonging to and owned by the said party of the second part, to take from such sewer by means of such openings and valves and gates, and as he, his heirs and assigns, may desire, such part of the water and sewage therein and to use the same

for the purpose of and in irrigating and fertilizing such lands as he, his heirs and assigns, may wish and that such privilege within the bounds of said Section Five (5) aforesaid shall be and remain exclusive to the owner of that portion of Section Five (5) aforesaid."

"That said party of the first part further covenants and agrees that the said party of the second part, his heirs and assigns, shall have and hereby grants to the said party of the second part the right to drain surface waters from that portion of said Section Five (5) now belonging to and owned by the said party of the second part, in case of flood or overflow, into the said sewer and to use any or all of the manholes aforesaid, all in the exercise of due care."

In March 1939, an unusual flood condition developed in the Missouri River due to an ice gorge that formed in the river south of Bismarck. Lowlands south of the city of Bismarck were flooded including a part of Park Hill Addition. The flood waters from the river, however, did not overflow plaintiff's premises. The water from the river backed up in the sewer to the extent that it prevented the free flow of sewage therefrom. This caused the sewage to accumulate in the sewer and force its way up through the manhole near the plaintiff's property. The sewage overflowed plaintiff's lot and filled two basements under the house. The plaintiff seeks damages for the injury caused thereby. The jury returned a verdict in favor of the city. The trial court granted plaintiff's motion for a new trial. The matter now comes to us upon appeal from the order granting the new trial.

In his complaint the plaintiff alleges that the defendant carelessly and negligently constructed and maintained the sewer and seeks damages resulting from such negligence. He also alleges that the construction and maintenance of the sewer and manhole through which the sewage escaped constituted the damaging of private property for public use without just compensation within the purview of the provisions of the constitution prohibiting the taking or damaging of private property for public use without just compensation (N. D. Const. § 14). Upon motion of the defendant, made at the beginning of the trial, certain allegations dealing with the plaintiff's personal inconvenience and discomfort were stricken and the issues were confined to damages to property.

The plaintiff introduced evidence tending to show that the sewage injured the soil over which it flowed by lessening its productivity, that it damaged the basements by causing the walls to crumble and required the expenditure of certain sums in employing labor to clean the premises. His evidence also tended to show some damage to personal property including fuel and vegetables in one of the basements. An engineer testifying as a witness for the plaintiff stated that plaintiff's property could have been protected by so constructing the manhole that it extended 8 or 10 feet above the ground.

The defendant's answer denies generally the allegations of the complaint and alleges as a further defense the written contract between the city and I. P. Baker from which we have quoted.

The city introduced evidence showing that the sewer was constructed according to plans and specifications; that after its construction by the city the sewer was accepted by Mr. Baker, the then owner of the premises and that since that time the sewer has been maintained in accordance with the contract between the city and Baker. There is no testimony that the sewer had previously caused any difficulty or that sewage had escaped therefrom although Park Hill Addition had been flooded once by the Missouri River since the sewer was constructed.

Section 3697, N. D. Comp. Laws 1913, vests in cities "power to establish and maintain at any time a general system of sewerage for the city, in such manner and under such regulations as the council shall deem expedient, and to alter or change the same from time to time as the council may deem proper." Cities operating under the commission form of government have these same powers. N. D. Comp. Laws 1913, § 3834. Section 3697, N. D. Comp. Laws 1913, also authorizes a city to acquire by purchase or condemnation proceedings property over which to construct a sewer.

In constructing a sewer system, a city acts in its governmental capacity. In providing an adequate sewage system, a city renders a public service in the interest of sanitation and health. Authorities are not in accord as to whether the maintenance of a sewage system is the exercise of governmental power or whether the maintenance is of such a nature as to render the city liable for damages resulting from negli-

gent maintenance. "Whatever the rule may be as to ordinary surface water or rainfalls, it is settled that a municipal corporation is not liable for damages caused by an overflow of its sewers occasioned by extraordinary rains or floods." McQuillin, Municipal Corporations, 2d ed. § 2868.

It is generally held that a city is not liable because sewers sufficient under ordinary conditions are inadequate to carry off surplus waters resulting from extraordinary and unusual rainfalls. Spitzer v. Waterbury, 113 Conn 84, 154 A. 157; Seay v. Louisville, 259 Ky 64, 82 SW (2d) 212; Aron v. Philadelphia, 310 Pa 84; 164 A 777; Deschner v. Ipswich, 59 SD 456, 240 NW 487; Hershey Beverage Corp. v. Schenectady, 249 App Div 668, 291 NYS 256; Geuder, P. & F. Co. v. Milwaukee, 147 Wis 491, 133 NW 835. While these cases deal mainly with surface waters and storm sewers, it is an underlying principle of their reasoning that negligence cannot be predicated upon the failure of a city to anticipate extraordinary floods and provide a sewage system that the city guarantees under all hazards and conditions. A city is not required to anticipate Acts of God but only those things that ordinary prudence would indicate might reasonably happen.

In the case before us, the evidence conclusively shows that the primary cause of the sewer overflow was the ice gorge in the Missouri River that caused its waters to back up over the lowlands. This condition was certainly as extraordinary and unusual as the freshets and floods involved in the cases that we have cited. On this record there can be no recovery against the city on the theory of negligence.

The plaintiff upon this appeal bases his argument chiefly upon the constitutional inhibition against the damage of private property by public use without compensation. In his brief he states, "The plaintiff is basing his cause of action upon § 14 of the Constitution, to wit, that property cannot be damaged by public use without just compensation." He cites, Mayer v. Studer & M. Co. 66 ND 190, 262 NW 925; King v. Stark County, 66 ND 467, 266 NW 654; and King v. Stark County, 67 ND 260, 271 NW 771.

In Mayer v. Studer & M. Co. (ND) supra, we said that, "Where the state or an agency thereof acting in a sovereign capacity takes or damages private property for public use without legal exercise of the

power of eminent domain, the aggrieved party may recover compensation for the property thus taken or compensation for the damages to his property thus inflicted. A careful reading of the complaint impels us to hold that the cause of action sought to be stated is based wholly upon the careless and negligent construction of the highway and culvert and not upon an obligation to compensate for private property taken or damaged for public use." Thus, we distinguish between an action for damages based upon negligence and an action based upon damage to private property for public use within the purview of § 14 of the Constitution. That section of the Constitution does not bear upon damages resulting from negligence of public corporations or their agents; it deals with those damages that would normally flow from the exercise of the power of eminent domain.

When the city constructed its sewer, the taking or damaging of private property occasioned thereby was a taking or damaging for public use. Norwood v. Sheen, 126 Ohio St. 482, 186 NE 102, 87 ALR 1375. Compensation was assured under the provisions of § 14 of the North Dakota Constitution. However, the city did not acquire, by condemnation proceedings, the right to construct its sewer across the lands that afterwards became Park Hill Addition. It acquired this right by contract with the owner of the property. By that contract, it secured the rights which it could have otherwise obtained by the exercise of the power of eminent domain. "The conveyance of land for a public purpose will ordinarily vest in the grantee the same rights as though the land had been acquired by condemnation. The conveyance will be held to be a release of all damages which would be presumed to be included in the award of damages if the property had been condemned." Lewis, Eminent Domain, 3d ed § 474. Pennsylvania R. Co. v. Sagamore Coal Co. 281 Pa 233, 126 A 386, 39 ALR 882.

When the plaintiff and his wife purchased their property on contract, the construction of the sewer had long since been completed and it had been accepted by the then owner of the premises. It does not appear that any changes or alterations were made in the sewer or its outlets. Compensation was made to Baker by the mutual terms and benefits of his contract with the city. All damages that arose from

the exercise of the city's power of eminent domain or its equivalent acquisition of rights under the contract were satisfied by that contract. "Where nothing to the contrary appears it must be presumed that compensation was taken or the right to compensation was waived for such damage, whatever its nature, as would result from the ordinary and reasonable use of the property in the manner contemplated and for the purpose for which the easement was dedicated or acquired. That is, for such a use in such a manner as was reasonably within the contemplation of the parties at the time." King v. Stark County, 67 ND 260, 271 NW 771. No right to recover damages under § 14 of the North Dakota Constitution passed to the Plaintiff upon his purchase of the premises. Indiana, B. & W. R. Co. v. Allen, 100 Ind 409.

The evidence clearly discloses that the immediate cause of the sewage overflow was the Missouri River flood—an unusual incident and one which was not to be anticipated either in the natural course of events or because of any previous experience. The record wholly fails to show actionable negligence on the part of the city. The overflow of the sewage in March, 1939, did not constitute the taking or damaging of plaintiff's property within the meaning of § 14 of the North Dakota Constitution. It was not the result of any action on the part of the city within the scope of its powers of eminent domain. In so far as the construction of the sewer is concerned, all damages had been compensated for to the owner of the land at the time the sewer was built.

The city of Bismarck is not liable to the plaintiff for damages either under the theory of negligence or under the provisions of § 14 of the North Dakota Constitution. The trial court erred in setting aside the verdict of the jury and granting a new trial. The order granting a new trial is reversed.

CHRISTIANSON, NUESSLE, and BURKE, JJ., concur.

BURR, Ch J., I dissent. The decision shuts out all cause of action for the plaintiff.