NORTHERN PACIFIC RAILWAY COMPA-
NY, a Corporation, Plaintiff and Appellant,

v.

MORTON COUNTY, North Dakota, a Public
Corporation, State of North Dakota, North
Dakota State Highway Department, and
A. W. Wentz, as State Highway Commis-
sioner, Defendants and Respondents.

No. 8077.

Supreme Court of North Dakota.

April 21, 1964.

On Rehearing Dec. 3, 1964.

Conmy, Conmy & Feste, Fargo, for plaintiff and appellant.

William C. Kelsch, State's Atty. of Morton County, and C. J. Schauss, Mandan, for defendant and respondent Morton County.

Helgi Johanneson, Atty. Gen., Jon R. Kerian, Asst. Atty. Gen., and David L. Milhollan and Francis Breidenbach, Sp. Asst. Attys. Gen., Bismarck, for defendants and respondents State, N. D. State Highway Dept. and State Highway Comr.

TEIGEN, Judge (on reassignment).

The object of this action is to recover compensation from the defendants for damages to the plaintiff's railroad grade and track.

The plaintiff in its complaint alleges that on or about October 10, 1957, the defendants were reconstructing and altering a road and, in doing so, caused and permitted great quantities of earth to be thrown upon and against plaintiff's adjoining grade

and tracks, damaging its grade and tracks in the sum of $6,949.95.

The evidence discloses a landslide occurred in an area between the road being reconstructed and altered on the side of a bluff and the Heart River below. The plaintiff's railroad track is located below the road and is located between said road and the Heart River. The landslide moved the plaintiff's railroad track about 14 feet laterally eastward toward the river and vertically downward about five feet. The plaintiff also alleges its damage was "because of and as a consequence of" the reconstruction and alteration of the road by the defendants. It claims it is entitled to compensation under Section 14 of the North Dakota Constitution as its property was damaged for a public use. Negligence is not alleged and is not an issue in this action.

The defendants answered separately denying the damage alleged in plaintiff's complaint was caused by the improvement.

The defendant W. H. Noel and Company was dismissed from the action by an order of the court before trial. No appeal has been taken from that order.

The remaining defendants made a demand for a jury trial pursuant to Rule 38, North Dakota Rules of Civil Procedure.

A jury trial was held. At the close of the plaintiff's case, the court granted the motion of the defendant Morton County for a dismissal of the plaintiff's action against it without prejudice. The trial was completed and the jury returned a verdict dismissing the plaintiff's cause of action against the remaining defendants, which were the State of North Dakota, North Dakota State Highway Department, and A. W. Wentz as State Highway Commissioner.

This appeal is from the judgment entered on the verdict in favor of the State of North Dakota, the State Highway Department, and A. W. Wentz as State Highway Commissioner, and also from the judgment entered in favor of the defendant Morton County.

The road involved is generally known as the "Old Fort Lincoln Road." It commences in the City of Mandan, North Dakota, and extends in a southeasterly direction along the Heart River and subsequently parallel to the Missouri River. It is designated as "Morton County Highway No. 20" and for the purpose of reconstruction and alteration was designated Federal Secondary Route 558. By Chapter 20 of the 1957 Session Laws, the State Legislature appropriated $38,000 for the construction by the State Highway Department of approximately five miles of bituminous surfaced highway of Federal Aid Secondary Route 558 from its junction with Highway No. 10 in Mandan, North Dakota, to the south boundary line of Fort Lincoln State Park, according to specifications of the State Highway Department. Plans and specifications for the improvements, however, were prepared by Morton County, which plans and specifications were approved by the North Dakota State Highway Department. A contract was entered into between the State Highway Department and Morton County by which Morton County agreed to prepare all plans and specifications necessary for the reconstruction, acquire the necessary right of way, and do all things necessary for the supervision and construction of the project. The project was constructed under the direct supervision of the Morton County engineer. The State Highway Department entered into a contract with the defendant W. H. Noel and Company, a road construction contractor, to build the road. Payment for the construction was to be made by the State Highway Department from funds appropriated by the Legislature and from Federal aid money available for the purpose.

Plans and specifications prepared by the county engineer for this project provided for the construction of a parking area adjacent to the road for a distance of about

800 feet located generally between Stations 207 and 215. The landslide occurred in the approximate location of Station 211. In this area the road ran along the side of a bluff, which is common terrain along the Heart and Missouri Rivers. The road is elevated above the Heart River. Its delta is the bottom lands and the road commands a view of these areas, including the Missouri River in the distance. The parking area was intended to serve as a place where motorists could park to view the scenery. The plaintiff's railroad track ran immediately below Station 211 parallel with the road and also parallel with the Heart River a short distance east of the tracks. The parking area was constructed by moving dirt from the upper slope of the bluff on the west of the road to the downslope area on the east side of the road. Thus the back slope on the west side of the road was cut down and the slope on the east side of the road was built up to form the parking area. The parking area was nearly complete. Approximately 36,000 tons of dirt had been moved from the west side to the east side of the road. It was located above the plaintiff's railroad tracks.

On the 10th day of October, 1957, a slide occurred in the general vicinity of this parking area. It resulted in a vertical and horizontal displacement of the road and the parking area. The road and parking area were displaced vertically downward 10 to 12 feet and horizontally eastward four to five feet. There was lateral displacement eastward of plaintiff's grade and tracks of approximately 14 feet and vertical displacement downward of approximately five feet. The parking area remained relatively intact. The slide ended in the Heart River which was located a short distance east of the plaintiff's railroad tracks. It caused a bulge in the river bank and an upward displacement of the soil in that area. The slide was a massive movement of earth approximately 500 feet in width at the top and about 700 feet at the river, running from the county road into the Heart River, a distance of approximately 400 feet.

Following the occurrence of the slide, remedial steps were taken to prevent further disturbance. The dirt, or a major portion thereof in place to construct the parking area, was graded down the slope and placed between the plaintiff's railroad track and the Heart River or, in other words, upon the toe of the slide. It was explained that this placed more weight upon the toe of the slide and reduced the weight at the top of the slide area, thus acting as a deterrent to future or additional slides. This work was performed by the plaintiff railroad and was acquiesced in by the defendant Morton County. Thus the parking area which was almost completed was removed and the plans were modified to eliminate the parking area.

Conflicting evidence was introduced as to the cause of the slide. Evidence produced by the plaintiff tended to establish the slide was caused by the acts of the defendants in taking 36,000 tons of dirt from the west or upslope side of the road and placing it on the east or downslope side of the road, and applied the critical circle or Swedish circle method for the purpose of calculating this as the cause. The fault line was clearly visible on each side of the slide area. The plaintiff's expert witnesses examined the slide area after the slide occurred and concluded that the landslide consisted of one block of earth located on a slope which was caused by loading it at the high point, being the road with adjacent parking area, and that it was not caused by erosion by the Heart River at the toe of the slide. In applying this theory, the experts computed the intensity of the shear stress or shear loading along a circular line underlying the surface of the slide area, the upper part of the circular line terminating at the upper part of the slide area and the lower end of the circular line terminating at the toe of the slide, which in this case was in the Heart River.

A point on the circular line was then calculated where the weight of the mass at the lower end of the slide balances with

an equal part of the mass of the upper end of the slide within the circular line. This constitutes a balanced area. The weight of the mass above this point on the circular line was then computed to determine the shear loading along the circular line. These experts computed that the shear loading before the slide in this instance was 1,061 pounds per square foot, and that the additional loading of the upper part of the slide with 36,000 tons of dirt, which were added to construct the parking area, raised the potential energy of the mass already in place by 27.7%, and increased the shear stress from 1,061 pounds to 1,355 pounds per square foot. The plaintiff's experts testified that this was sufficient to exceed the shear capacity of the soil along the circular or critical line and, therefore, the unbalance was made greater and exceeded the shear capacity of the soil. It followed that the entire mass above the circular line rotated or revolved along the circular line. The fault plane followed the circular line as thus computed. This caused the top of the slide to move downward and outward and the toe of the slide to move upward and outward. This, they testify, indicated that the shear strength of the soil along the critical circle or fault plane was somewhere between 1,061 pounds and 1,355 pounds per square foot and, therefore, the slide was caused by the additional loading of the upper part of the slide by the defendants in the process of the construction of the parking area.

The defendants' evidence, in the form of expert testimony, presents a different theory as to the cause of the slide than that presented by the plaintiff. This evidence disputes the plaintiff's contention that the mass of the slide area consisted of a single block revolving or rotating on a fault plane. It is the theory of the defense, based on examination and investigation of the area, that the slide area moved, settled, and moved out toward the river as a series of blocks, each bounded by its own fault plane and all included in the master fault plane. It appears to be the theory propounded that the river side of a bluff gradually breaks into blocks of earth as the support at the bottom is weakened and collapses. The lower block is weakened by saturation of the earth, by water permeating its banks, by ground waters working their way toward the river and by erosion. As the support is weakened, the earth above and along the slope of the bluff breaks into blocks slowly and imperceptibly with cracks or fissures running downward into the ground separating the blocks. These blocks work progressively down to the bottom of the bluff as the lower block collapses or is eroded away. When such a movement occurs there is a landslide as each block drops into place until the area again reaches a temporary state of equilibrium. This process may be likened unto a keystone in a building. In order for a block to drop into place, there has to be a space for the block to drop into. This process commences with the collapse of the lower block. Thus, although the loading of the top block of the slide may have been a factor, it was coupled with other factors more important to the cause and the slide would have occurred anyway. It was just a question of time.

The experts in the plaintiff's case were engineers. The expert in the defendants' case was a geologist. According to the testimony submitted by the defendants, the formation and sliding of blocks is especially characteristic of the Heart River Valley. The defendants' expert witness testified that in his opinion three or four causes contributed to this particular slide, one of which was the loading of the upper block of the slide area with the weight of the additional dirt, which was added to construct the parking area. However, he testified he could not state that the improvement caused the slide that occurred on October 10, 1957, as the slide was inevitable. No one could accurately determine when it would occur.

The defendants contend the burden of proof is on the plaintiff to show by a fair preponderance of the evidence that the

slide was caused by the improvement and it has failed in that respect; therefore, the judgment should be affirmed.

The plaintiff served a demand for trial de novo with its notice of appeal to this court. The demand for trial de novo is not made a part of the settled statement of the case. The defendants have objected to a trial of the case anew in this court for this reason and also object on the further ground that the case was in fact tried to a jury. The plaintiff takes the position that the question of right to recover is a court question. When all parties had rested in the trial and after motions for directed verdicts had been made and denied, the plaintiff moved the court to exclude from the jury the question of the cause of the damage and to limit the question to be decided by the jury only to a determination of the amount of damages. This motion was denied and the question was submitted to the jury. The jury decided the question against the plaintiff. The plaintiff specifies it was error to have submitted the question to the jury. The questions that arise from the above-outlined procedure are related in this way: If the plaintiff was entitled as a matter of right to a court decision on the question of cause of damages, the trial court erred in denying its motion. If cause is a question for decision by the trial court without a jury, the plaintiff apparently feels it is entitled to a trial de novo in this court. Therefore, we will first resolve whether it was error to deny the plaintiff's motion.

Section 14 of the North Dakota Constitution guarantees to a private party just compensation for damages to his property resulting from a public use. This court has held on a number of occasions that this obligation is, in effect, a contract to compensate for the damages which the State has caused. Mayer v. Studer & Manion Co., 66 N.D. 190, 262 N.W. 925; Jacobson v. State, 68 N.D. 259, 278 N.W. 652; and Little v. Burleigh County (N.D.), 82 N.W.2d 603.

Section 32–15–01, N.D.C.C., also provides that private property shall not be taken or damaged for public use without just compensation first having been paid to the owner. This is a statutory reiteration of the constitutional contractual obligation provided by Section 14 thereof. The term "damaged for public use" is not defined by the Constitution. Little v. Burleigh County, supra. Section 32–15–22, N.D.C.C., however, defines the areas in which compensation shall be made. Subsection 3 of Section 32–15–22 provides a jury shall ascertain and assess the amount of damages where property, though no part thereof is taken, will be damaged by the construction of the proposed improvement. This statute, in effect, provides for "consequential damages" arising from injuries to property caused by the construction of a public improvement, although no part thereof is taken. Little v. Burleigh County, supra. This is the area in which the plaintiff seeks damages in this case. Notwithstanding the character of the constitutional provision on eminent domain, the legislature has specifically authorized payment for damages to property caused by a public improvement, although no part thereof is taken for the improvement.

Section 22 of the North Dakota Constitution provides the State may, by legislative enactment, lay aside its sovereignty and consent to be sued on such terms and in such actions as it may prescribe. Dunham Lumber Co. v. Gresz, 70 N.D. 455, 295 N.W. 500. The State has consented that it or its agencies, including a county, may be sued in cases "arising upon contract." Section 32–12–02, N.D.C.C., and Little v. Burleigh County, supra.

This is an action on contract to recover compensation for damages to property, no part of which is taken, claimed to have been damaged by the defendants for public use in the building and improvement of the road and adjacent parking area. The defendants have denied that there is a contract to compensate because the damage complained of was not proximately caused by and was not a natural conse-

quence of the improvement. The evidence adduced by the respective parties is in conflict on this question as we have already pointed out. A question of fact on the issue of cause arose.

Section 32–15–21, N.D.C.C., provides that in eminent domain proceedings the court shall have the power:

"2. To hear and determine all adverse or conflicting claims to the property sought to be condemned and to the damages therefor; * * *."

Section 32–15–22(3) provides a jury, if not waived, must hear such legal testimony as may be offered by any of the parties to the proceedings and thereupon must ascertain and assess "If the property, though no part thereof is taken, will be damaged by the construction of the proposed improvement, the amount of such damages; * * *." This section provides for "consequential damages" arising from injuries to other property, no part of which is taken, caused by the improvement. Little v. Burleigh County, supra.

Section 32–15–33, N.D.C.C., states that unless otherwise provided, the provisions of the North Dakota Rules of Civil Procedure are applicable to and constitute the rules and practice in the proceedings mentioned in the chapter on eminent domain.

We have said that the question of necessity in eminent domain cases is triable to the court without a jury. Bigelow v. Draper, 6 N.D. 152, 69 N.W. 570; Otter Tail Power Co. v. Von Bank, 72 N.D. 497, 8 N.W.2d 599, 145 A.L.R. 1343; Kessler v. Thompson (N.D.), 75 N.W.2d 172; and County of Pembina v. Nord, 78 N.D. 473, 49 N.W.2d 665. These holdings are based on the theory that neither the Constitution nor the statutes required a jury trial on the issue of necessity. Section 14 of the Constitution, in effect on the date of the slide, as well as the statutes, provided for a jury trial on the issue of compensa-

tion unless a jury is waived. Sections 32–15–01 and 32–15–22, N.D.C.C. Section 32–15–22(3) properly construed provides that a jury must "ascertain * * * If the property, though no part thereof is taken, will be damaged by the construction of the proposed improvement" and "assess * * * the amount of such damages" if it has found the property was damaged by the improvement. The evidence on the question of whether the improvement caused the damage is in conflict. It clearly presented a question for the jury to decide. The issue being one triable of right to a jury, the trial court did not err when it denied the plaintiff's motion to exclude from the jury the question of cause of the damage and limit the question to be decided by the jury to the amount of damages only. Our interpretation is in harmony with the statutory rule providing the measure of damages for breach of contract. Section 32–03–09, N.D. C.C.; and Burt v. Lake Region Flying Service, 78 N.D. 928, 54 N.W.2d 339.

For the reasons aforesaid, we need not consider the merits of the defendant's objection to a trial de novo in this court as the case does not qualify under Section 28–27–32, N.D.C.C., for trial de novo on appeal.

Our decision, as set forth above, is in harmony with the general rule.

"As in other civil actions, questions of law are for the court; and questions of fact, on which the evidence is conflicting or of a doubtful character, are for the jury.

"* * *

"In accordance with the above rules, the following questions have been held to be for the jury: Questions * * * whether the injury was caused by the defendant's acts; * * *." 30 C.J.S. Eminent Domain § 436.

"Where there is a trial by jury, it is for the court to determine what acts, omissions, facts, and circumstances are

competent to be considered as evidence of damages; but whether such acts, omissions, facts, or circumstances affect an owner's property and damage it, and the amount of such damages, are for the jury." 18 Am.Jur., Eminent Domain, Section 403.

We next will consider the plaintiff's contention that it was error for the court to grant the motion of the defendant Morton County for a dismissal of the action against the County. The record discloses that the road was a Morton County road, and that it was to remain a part of the county road system; that all of the plans and specifications were prepared by the county engineer, subject to the approval of the State Highway Department; and that the county engineer had supervision of the construction of the entire project. Under these circumstances, the trial court, because the contract which actually was entered into for the making of the improvements had been entered into by the State Highway Department, held that, if there was any liability for damages suffered by the plaintiff, only the State Highway Department could be liable, and that the County of Morton, not being a party to the contract for the improvements, could not be held liable.

These highway improvements, although contracted for by the State Highway Department, were to be made on a county highway, and the work was to be done for the benefit of the County of Morton. The County acquired the land which was necessary for the improvements and the County, through its engineer, prepared the plans and specifications for the entire project. The county engineer acted as the actual supervisor of the work which was done in carrying out the plans and specifications.

North Dakota law gives to the board of county commissioners, in their respective counties, the sole authority to acquire land for and to construct the roads which are a part of the county road system. The County has the duty and the responsibility of building and repairing all county roads. Section 11–11–17, N.D.C.C.

To fulfill this duty, the County employed a qualified county engineer as it was authorized to do under Section 11–31–01, N.D.C.C. It was the duty of such engineer to design and make plans for county highway construction. Section 11–31–03, N.D.C.C.

■ However, the Federal Bureau of Public Roads would not deal with the County and would deal only with the State Highway Department. Therefore, the North Dakota Legislative Assembly enacted Chapter 20 of the 1957 Session Laws for the construction of this particular highway in Morton County. The statute was enacted so that the County would be able to obtain Federal matching funds, and the State merely acted as the conduit through which the Federal funds were made available for the particular county road in question. However, the road was still to be a county road, and not a State highway.

■ The State Highway Department, in entering into the contract for the construction of this county road, therefore was acting for both itself and the county commissioners of Morton County. The County itself admits this to be the case, for in its answer to the plaintiff's complaint the County alleges:

> " * * * it is admitted that this defendant was involved in the construction of a road in Morton County known as Federal Aid Secondary Route No. 558; * * *"

The County being involved in and having participated in the project of reconstructing Old Fort Lincoln Road, and by such participation being involved in the public use of the public property, which use is alleged to have damaged the plaintiff's property, the County of Morton would be liable with the State Highway Department for any damage resulting from such public use if there is liability on the part of any party.

It was therefore error for the trial court to dismiss the plaintiff's cause of action as to the defendant Morton County, for, if the plaintiff is entitled to recover damages for the injury which it has sustained, it would be entitled to recover from both the County and the State.

The plaintiff elected to bring this action against both parties. The liability, if it is established, is joint. The rights of the parties defendant, including Morton County, are so intermingled that injustice might result from a new trial as to Morton County alone. The error of the trial court dismissing plaintiff's cause of action as to the defendant Morton County permeates the entire case and, therefore, we hold a new trial is granted as to all parties defendant named in the complaint, except the defendant W. H. Noel and Company. Section 28-27-29, N.D.C.C.; 39 Am.Jur., New Trial, Section 25; and 66 C.J.S. New Trial § 12.

The specification that the evidence is insufficient to justify the verdict of the jury is now moot and will not be considered by this court.

Having granted a new trial in this action, we deem it proper to consider the plaintiff's specification of error and argument by which it contends that the court's failure to instruct the jury on the theory of concurrent cause was a failure to instruct on the controlling issue and amounted to a misdirection.

No request was made for such an instruction. It has been held a request must be made in the trial court in order to present for review on appeal the contention that the court failed fully to instruct as to concurring cause. 4 C.J.S. Appeal and Error § 307, p. 981. This ordinarily would dispose of the question. However, in view of the fact that we have granted a new trial and the question is likely to arise again, we will examine the merits of the contention.

The court charged that under Section 14 of the Constitution, private property shall not be taken or damaged for public use without just compensation to the owner, and that the measure of damages "is the amount which will compensate the plaintiff for all detriment proximately caused thereby whether it could be anticipated or not." The court then defines proximate cause as follows:

"Proximate cause is that cause which, as a natural and continuous sequence, unbroken by any controlling intervening cause, produces the injury, and without which it would not have occurred. The proximate cause is not necessarily the last cause but includes any act that aided in producing the result, without which the result would not have occurred."

The court also instructed the jury that where the State or any agency thereof, acting in a sovereign capacity, takes or damages private property for public use and without the legal exercise of the power of eminent domain, the aggrieved party may recover just compensation for the damage to his property thus inflicted. The court then instructed the jury that if it finds by a fair preponderance of the evidence the reconstruction and improvement was the proximate cause of the damage or injury to the plaintiff's property, it should find a verdict for the plaintiff and assess damages. We find the instructions were adequate.

The plaintiff complains because the court instructed the jury that "every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor, in money, which is called damages." The challenge to this part of the instructions is that it amounts to a charge that the jury must find negligence, although the word negligence was not used and, thus, amounts to misdirection. The charge, as we outlined it above, has so

clearly presented the issue that the sentence quoted, in our opinion, would not confuse a jury of reasonable men and, considering the charge as a whole, did not constitute prejudicial error. Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11; and Elliott Supply Co. v. Green, 35 N.D. 641, 160 N.W. 1002.

 The plaintiff has cited no authority that the court should charge a jury on the theory of concurrent cause in actions for consequential damages resulting from a public improvement and we have found none.

In Volume 4, Nichols on Eminent Domain, Section 14.24, it is stated:

"The damage must be direct and proximate and not merely such as is possible, as may be conceived by the imagination, or such as affects merely the feelings of the property owner."

In 18 American Jurisprudence, Eminent Domain, Section 285, it is stated:

"In estimating damages to a lot, caused by the construction and maintenance of a railway in the street in front of the premises, but beyond the center line thereof, only such injuries to the property should be considered as proximately result from interference with the appurtenant easement for purposes of access, light, and air, which the owner has in that part of the street."

Section 32–03–09, N.D.C.C., provides the measure of damages for breach of contract and states as follows:

"For the breach of an obligation arising from contract, the measure of damages, except when otherwise expressly provided by the laws of this state, is the amount which will compensate the party aggrieved for all the detriment *proximately caused thereby* or which in the ordinary course of things would be likely to result therefrom. * * *" (Emphasis supplied.)

In Hamilton v. City of Bismarck, 71 N.D. 321, 300 N.W. 631, this court stated:

"That section [Section 14] of the Constitution does not bear upon damages resulting from negligence of public corporations or their agents; it deals with those damages that would *normally* flow from the exercise of the power of eminent domain." (Emphasis supplied.)

In cases involving a landowner's right of lateral support, compensation is recoverable without regard to the question of negligence where such injury is the direct result of the public improvement. 18 Am. Jur., Eminent Domain, Section 159.

In 29 C.J.S. Eminent Domain § 154, it is stated:

"The general rule is that damages for condemnation, to be recoverable, must be direct and certain, or proximate, so that contingent, remote, imaginary, speculative, or merely possible damages, such as the loss of speculative profits, or recovery in advance for torts which may be committed, will not be allowed."

We conclude from our research that rarely is a suit of this nature defended on the ground that the public improvement was not the cause of the damage alleged where it is admitted damage in fact did occur. The defendants do not deny that an earth slide occurred. They do not deny that the plaintiff's railroad tracks and grade were damaged and that they were required to expend money to regrade and restore the track in the slide area. The evidence produced by the defendants admits that the construction of the road and adjacent parking area may have been a factor in causing the slide but the evidence indicates that the slide may have occurred anyway as there were several other causes, each an efficient cause without the operation of which the slide would not have happened. The defendants' expert testimony

indicates the slide may be attributed to any or all of such causes and it cannot be determined which was the efficient and controlling cause or whether, without the concurrence of all, the event would have happened at all. They contend the defendants were not responsible for the other causes, which causes may have been sufficient in themselves to cause the slide. The defendants argue that to entitle the plaintiff to recover, it must show that the improvements were either the proximate cause of the slide or that the slide was a natural consequence of the improvement. There is merit to this argument.

Section 32–15–22, N.D.C.C., provides that the finder of fact in an action to determine damages must hear such legal testimony as may be offered by any of the parties to the proceeding and thereupon must ascertain

"2. * * * the damages which will accrue to the portion not sought to be condemned *by reason of* its severance from the portion sought to be condemned and *the construction of the improvement* * * * ;" (Emphasis supplied.)

and

"3. *If the property,* though no part thereof is taken, *will be damaged by the construction* of the proposed improvement, * * *." (Emphasis supplied.)

The language of Section 14 of the Constitution and Section 32–15–01, N.D.C.C., is identical. It forms the contractual agreement to compensate and, properly interpreted, requires a causal connection between the public use and the damage. It states in part:

"Private property shall not be * * * damaged for public use without just compensation * * *."

The statutory measure of damages for breach of contract, Section 32–03–09, allows compensation for "detriment proximately caused thereby." We are agreed that the constitutional and statutory provisions referred to above do not contemplate recovery for a cause which concurred with other causes in producing the injury, unless it can be determined that such cause was the proximate cause of the injury, and that the injury would not have been sustained but for the improvement for which the sovereign is responsible. Chacey v. City of Fargo, 5 N.D. 173, 64 N.W. 932.

For these reasons, it would not have been proper for the court to have instructed on the theory propounded.

A new trial is granted for the reasons set forth herein. Costs are allowed to plaintiff against the defendant Morton County, and the costs of the State of North Dakota, North Dakota State Highway Department, and A. W. Wentz as State Highway Commissioner, defendants, are allowed against the plaintiff.

MORRIS, C. J., and STRUTZ, ERICKSTAD and BURKE, JJ., concur.

### On Rehearing

TEIGEN, Judge.

We granted a rehearing on the petitions of the defendant Morton County and the plaintiff Northern Pacific Railway Company. The case was fully reargued to the court. The briefs submitted and the arguments made have been fully considered by this court. We find the grounds urged on the reargument were all fully considered by us in the original opinion to which we adhere.

MORRIS, C. J., and BURKE and ERICKSTAD, JJ., concur.

STRUTZ, J., did not participate.