Ewald FEILER, Plaintiff and Appellee,

v.

Katherine F. WANNER, Defendant and Appellant.

Civ. No. 10441.

Supreme Court of North Dakota.

Nov. 3, 1983.

Howe, Hardy, Galloway & Maus, Dickinson, for plaintiff and appellee; argued by Albert J. Hardy, Dickinson.

Kubik, Bogner, Bleth & Ridl, Dickinson, for defendant and appellant; argued by Joseph H. Kubik, Dickinson.

SAND, Justice.

The defendant, Katherine F. Wanner (Wanner), appealed from a summary judgment granted in favor of the plaintiff, Ewald Feiler (Feiler), in an action by Feiler to quiet title in himself to certain mineral rights.

Feiler owned a 650-acre farm in central Stark County, North Dakota. In the early 1960's the State sought acquisition of approximately 48 acres of Feiler's farm for construction of United States Interstate

Highway 94, hereinafter referred to as tract 1. The proposed path of the Interstate bisected Feiler's farm into two parts, a north half containing 370 acres and a south half containing 280 acres. The south half, hereinafter referred to as tract 2, contained Feiler's farmstead. The Interstate cut off the normal access to and from the farmstead.

Feiler objected to the division of his farm by the Interstate and refused to convey tract 1 to the State. In subsequent negotiations between Feiler and the State Highway Department, the Highway Department offered to install a machinery pass under the Interstate for access to tract 2. Feiler rejected the offer because he believed that it would not accommodate his machinery and that it would become blocked with snow in the winter. Finally, in May of 1962, Feiler agreed to convey tracts 1 and 2 to the State for $58,000.00.

Feiler executed two warranty deeds, one for each tract. The deed conveying tract 1 contained the following mineral reservation clause:

"Subject to oil and gas leases, if any, mineral reservations and utility line easements of record,

"Excepting and reserving to the grantors herein, their successors and assigns, all oil, oil rights, natural gas, natural gas rights and other fluid minerals that may be within or under the parcel of land herein described without however the right ever to drill, dig or mine through the surface of the said land therefor or otherwise in such manner as to endanger the safety of any highway that may be constructed on the lands hereby conveyed."

The deed conveying tract 2 contained a different mineral reservation clause. It provided as follows:

"Subject to oil and gas leases, if any, mineral reservations and utility line easements of record."

The State subsequently sold tract 2 to John J. Wanner. The State's quitclaim deed to Wanner contained the following mineral reservation clause:

"Subject to oil and gas leases, if any, mineral reservations and utility line easements of record."

John J. Wanner died and his widow, Katherine F. Wanner, acquired title to tract 2 pursuant to a final decree of distribution in April of 1972. Feiler brought this action to quiet title to the mineral estate of tract 2 in himself and the trial court granted summary judgment in his favor. Katherine F. Wanner appealed.

■ There is no dispute as to any material fact. On appeal Wanner has asked this Court to review the trial court's legal conclusion that Feiler is entitled to the minerals in question as a matter of law. Questions of law are fully reviewable on appeal. *Gulden v. Sloan,* 311 N.W.2d 568, 572 (N.D. 1981).

Feiler contends that tract 2 was acquired for highway purposes and that, pursuant to North Dakota Century Code §§ 24–01–18 and 24–01–32, the State did not acquire any interest in the mineral estate. Accordingly, Feiler argues, no specific mineral reservation was required.

NDCC § 24–01–18 provides in part:

"The [highway] commissioner, by order, on behalf of the state, and as part of the cost of constructing .. a state highway . . . may purchase, acquire, take over, or condemn under the right and power of eminent domain, for the state, any and all lands in fee simple or such easements thereof which he shall deem necessary for present public use, either temporary or permanent, or which he may deem necessary for reasonable future public use . . . provided however, as to any and all lands taken or acquired for highway, road or street purposes, he shall not obtain any rights or interest in or to the oil, gas or fluid minerals on or underlying said lands."

NDCC § 24–01–32 provides in part:

". . . the highway authorities of the state . . . may acquire private or public property and property rights for controlled-access facilities and service roads, including rights of access, air, view,

lights, and such advertising rights outside of the right of way as may be determined by the commissioner to be in the public interest, by gift, devise, purchase, or condemnation in the same manner as such units are now or hereafter may be authorized by law to acquire such property or property rights in connection with highways and streets .... All property rights acquired ... shall be in fee simple, provided, however, as to any and all lands acquired or taken for highway, road, or street purposes, they shall not obtain any rights or interest in or to the oil, gas or fluid minerals underlying said lands. In connection with the acquisition of property or property rights for any controlled-access facility or portion thereof, or service road in connection therewith, the state ... highway authority may, in its discretion acquire an entire lot, block, or tract of land, if, by so doing, the interests of the public will be best served, even though said entire lot, block, or tract is not immediately needed for the right of way proper."

■ North Dakota Century Code § 24–01–01.1 defines words and phrases contained in Title 24 to have the meaning ascribed to them in Chapter 24–01. NDCC § 24–01–01.1(16) defines "fee simple" to mean:

" 'Fee simple' shall mean an absolute estate or ownership in property including unlimited power of alienation, except as to any and all lands acquired or taken for highway, road or street purposes. Where lands are taken for such purposes, 'fee simple' shall not be deemed to include any oil, gas or fluid mineral rights."

Subsection 20 of § 24–01–01.1 defines "highway, street or road" but no definition is given for the phrase "highway, road or street purposes." As a result, and pursuant to NDCC § 1–02–02 the phrase is given the ordinary meaning and refers to the purpose

of the property rather than its technical use.

■ The preceding statutes and definition of fee simple expressly prohibit the state from obtaining any mineral interest in lands acquired for highway purposes. The critical issue is whether or not the state acquired tract 2 for highway purposes. Wanner contends that tract 2 was acquired by a private sale rather than by eminent domain because tract 2 was not necessary for highway right of way purposes. Therefore, Wanner argues, the sale was not for street or highway purposes within the meaning of NDCC §§ 24–01–18 and 24–01–32, and the State acquired fee simple title with the ability to convey the mineral interest to Wanner. We do not agree.

Although tract 2 was unnecessary for construction of the Interstate, it was not acquired fortuitously. The facts indicate that the State had no reason for acquiring tract 2 other than to expedite economical construction of the Interstate. Feiler was apparently steadfast in his position that the State either purchase both tracts or attempt to condemn tract 1. Under these circumstances, the State could have reasonably believed that it was more economical to purchase both tracts than to face protracted condemnation proceedings involving tract 1. This is particularly true in view of the State's ability to later sell[1] tract 2 as it did in this case.

The authorization for the state highway commissioner to make such discretionary judgments is statutory. NDCC § 24–01–32 provides that:

"... the highway [commissioner] ... may acquire private ... property ... for controlled-access facilities ... as may be determined by [him] to be in the public interest...."

Section 24–01–32 further provides that the highway commissioner:

of the state the interests of the state in property acquired by purchase under this title and deemed no longer necessary for the purposes thereof ...."

---

1. The authority for the State to sell land taken for highway purposes is contained in NDCC § 24–01–28. It provides in part as follows: "The governor, on recommendation of the commissioner, may sell and convey on behalf

"... may, in [his] discretion acquire an entire ... tract of land, if, by so doing, the interests of the public will be best served, even though [the] entire ... tract is not immediately needed for the right of way proper."

We are not persuaded by Wanner's argument that the State acquired the mineral rights to tract 2 because the tract was obtained by purchase rather than by condemnation. Although tract 2 was acquired by purchase, it involved an element of compulsion not present in a conveyance between a willing buyer and a willing seller. Thus, the effect of the acquisition can be likened to condemnation in eminent domain even though the land was acquired without using the condemnation procedure. Moreover, NDCC §§ 24–01–01.1(16), 24–01–18, and 24–01–32 all refer to the ability of the State to take or "acquire" lands for highway purposes. As we stated in *Hamilton v. City of Bismarck*, 71 N.D. 321, 300 N.W. 631, 634 (1941), "The conveyance of land for a public purpose will ordinarily vest in the grantee the same rights as though the land had been acquired by condemnation."

■ In *Hamilton* the city of Bismarck acquired private property by contract for construction of a sewer line. We concluded that "By [the] contract, [the city] secured the rights which it could have otherwise obtained by the exercise of the power of eminent domain." *Hamilton, supra*, 300 N.W. at 634. We believe that where the State acquires land for highway purposes the Legislature did not intend to restrict the State's ability to acquire mineral rights in such lands only to cases in which formal eminent domain proceedings are brought.

■ Even assuming, arguendo, that the legislative intent of NDCC §§ 24–01–01.-1(16), 24–01–18, and 24–01–32 is disputable, we are guided by the principle that in eminent domain a statute should be construed to leave the owner with the greatest possible estate. *Wallentinson v. Williams Coun-*

ty, 101 N.W.2d 571, 575 (N.D.1960). In *Wallentinson* the highway department condemned a small parcel of land adjacent to a highway. Interpreting an earlier statute similar to the one at bar, we said:

"Generally, the nature or extent of a title or rights taken in the exercise of eminent domain depends on the statute conferring that power. Such statute will be strictly construed. Where the estate or interest to be taken is not definitely set forth, only such estate or interest may be taken as is reasonably necessary to carry out a public purpose for which the land is being taken."

■ Applying that rule to the instant case, the only interest reasonably necessary for construction of the Interstate was an interest in the surface rights to tract 2. Any doubt that may remain after carefully analyzing the provisions of Chapter 24–01 are resolved by the provisions of NDCC § 32–15–03.2 which was enacted by the same Legislature in 1953 which enacted Chapter 24–01.

■ NDCC § 32–15–03.2 provides:

"No transfer to the state of North Dakota or any of its political subdivisions of property for highway purposes shall be deemed to include any interest greater than an easement, and where any greater estate shall have been so transferred, the same is hereby reconveyed to the owner from which such land was originally taken, or to the heirs, executors, administrators, or assigns of such owner. Such reconveyance shall be subject to any existing contracts or agreements covering such property, and all rights and benefits thereof shall accrue to the grantee."

The State did not acquire a fee simple absolute, in the vernacular of the real estate business, from Feiler and, therefore, Wanner could not receive a greater interest than the State had[2]. The State acquired

---

**2.** In *Roeders v. City of Washburn*, 298 N.W.2d 779 (N.D.1980), we said the parties dealing with municipalities are charged with notice of the intent and limitation of this authority. *Me-*

*garry Bros. v. City of St. Thomas*, 66 N.W.2d 704 (N.D.1954); *Roberts v. City of Fargo*, 10 N.D. 230, 86 N.W. 726 (1901). The same ra-

no mineral rights, therefore, the rights to the mineral estate remained with Feiler. The decision of the trial court is affirmed.

ERICKSTAD, C.J., VANDE WALLE, J., and PAULSON *, Surrogate Justice, concur.

WALLACE D. BERNING, District Judge, sitting in place of PEDERSON, J., disqualified.

WALLACE D. BERNING, District Judge (dissenting).

I dissent. More deference should be given by the majority to the usual, traditional definitions of the words used in the statutes involved. The term "highway" is specifically defined in the statute (North Dakota Century Code § 24–01–01.1, paragraph 20). The restriction on ownership of minerals found in NDCC §§ 24–01–18 and 24–01–32 apply only to lands "underlying" property taken or acquired for highway purposes. Inasmuch as the word "underlying" has received little definitive attention by the courts, it is imperative that we view it in its common usage. NDCC § 1–02–02. *Webster's New World Dictionary of the American Language* (2d College Ed.1980) defines "underlying" as "lying under; placed beneath."

The premise that the conveyance of this land to the State is the same as by eminent domain fails when the appropriate provisions of NDCC § 24–01–18 and § 24–01–32 are examined. In those statutes, the mineral restriction refers to lands ". . . acquired or taken . . . ." Obviously, the framers of the legislation involved contemplated situations where the State would take land (condemnation) and in which the State would acquire land by purchase as in this case. The more general statute (NDCC § 32–15–03) restricts the receipt of minerals only in cases where lands are "taken" for public use. Although the definition of "fee simple" is qualified in NDCC § 24–01–01.1(16), this qualification extends only to lands ". . . acquired or taken for highway, road or

street purposes." The entire wording of NDCC §§ 24–01–32 and 24–01–18 imports that in other acquisitions title will be taken in the usual fee simple estate which would include ownership of the minerals. In my opinion, tract 2 was not taken for highway purposes as contemplated by the aforecited statutes.

It is interesting to note that a portion of NDCC § 24–01–32 states in part:

". . . highway authority may, in its discretion, *acquire* an entire lot, block, or tract of land, if, by so doing, the interests of the public will be best served, even though said entire lot, block, or tract is not immediately needed for the right of way proper." [Emphasis supplied.]

It would have been a very simple matter for the Legislature to have stated words to the effect that such collateral acquisition could be made only without minerals. They did not. Tract 2 is such an acquisition.

tionale has some application to the present case.

* Justice WM. L. PAULSON served as a Surrogate Justice for this case pursuant to Section 27–17–03, N.D.C.C.