111 So.2d 439 (1959)
HARRELL'S CANDY KITCHEN, INC., a Florida corporation, Augustin N. Thierry and Virginia B. Thierry, husband and wife, and Paul F. Thielen and Jeanette B. Thielen, husband and wife, Appellants,
v.
SARASOTA-MANATEE AIRPORT AUTHORITY, Appellee.
Supreme Court of Florida.
April 17, 1959.
*440 Cody Fowler (of Fowler, White, Gillen, Yancey & Humkey), Miami, and Richard D. Bailey, Sarasota, for appellants.
Williams, Parker, Harrison & Dietz and W.T. Harrison, Jr., Sarasota, Keen, O'Kelley & Spitz, J. Velma Keen and Chas. H. Spitz, Tallahassee, for appellee.
James F. Eckhart, Miami, for Dade County Port Authority.
John G. Baker (of Baker, Berson, Lilley & Baker), Orlando, for the City of Orlando.
William E. Thompson, Tampa, for Hillsborough County Aviation Authority, amicus curiae.
DREW, Justice.
This case arose out of the imposition of vertical zoning regulations on appellants' land under the authority of Chapter 333, Florida Statutes, F.S.A.
The complaint in the cause was filed by the appellee, Sarasota-Manatee Airport Authority, a body politic created by Chapter 31263, Laws of Florida, Special Acts 1955, to enjoin the erection of a pyramid or superstructure atop a building under construction near the runway to a height in excess of that allowed by the regulations adopted by the Airport Zoning Board of Sarasota and Manatee Counties pursuant to the provisions of Chapter 333, Florida Statutes, F.S.A.[1] A temporary injunction *441 was issued, the trial court declined to dissolve it, whereupon the defendant property owners, appellants in this Court, answered attacking the validity of the regulation and asserting among other things as a "second, separate and complete defense" the invalidity of Chapter 333, supra, because said statute "constitutes a deprivation of the property of these defendants without due process of law; constitutes an unlawful taking of the property of these defendants without just compensation; constitutes an unlawful exercise of the police power of the State of Florida in that the subject matter of said Chapter bears no relationship to the public or general welfare as regards these defendants and their property; and constitutes a law too vague and uncertain to be enforceable."
Extensive testimony was taken by the respective parties and, upon consideration of the matter on final hearing, the trial court held that the airport regulations had been adopted pursuant to the provisions of F.S. Chapter 333, F.S.A.; "that the declaration of the Legislature of the State of Florida in enacting the enabling act pursuant to which the airport zoning regulations in question were adopted is an entirely reasonable and correct statement of public policy;" that said regulations were valid, bore a substantial relation to the general welfare, and were duly and lawfully promulgated; and required by mandatory injunction that the defendants remove the excess height from their building.
The jurisdiction of this Court to entertain this appeal rests upon the constitutional provision for direct review of "final judgments or decrees directly passing upon the validity of a state statute * * *."[2] The court below, in making its ruling, did not explicitly rule upon the validity of the act, or refer to those objections interposed by appellants which go to the validity or constitutionality of the controlling law, but, as previously pointed out in this connection, "this fact does not alter the effect of the decree as a negative disposition of all pertinent questions properly raised."[3] Upon both reason and authority the record itself must establish the nature and limits of the issues presented in a given cause, independent of the language of the decree or statement of the court.
Under this doctrine of inherency, however, those assertions which are merely colorable (as for instance where the question has already been decided), lacking in *442 substance, indefinite, or unrelated to the facts at bar, are insufficient as a predicate for finding that a decree, though silent or ambiguous in its expressions on the point, necessarily decides an issue essential to constitutional jurisdiction in this court.[4] Apparently in recognition that the objections raised in their answer, quoted above, were of this character, the appellants, so far as can be determined, abandoned those contentions, and on this appeal have confined their jurisdictional argument to an assertion, not referred to in the record of the proceedings below, that the statute in question, F.S. Chapter 333, F.S.A., violates the provisions of Article III, Section 27, Florida Constitution,[5] requiring election or gubernatorial appointment of state and county officers. In this connection, a certificate of the trial court has been filed in this court, certifying that the latter issue was in fact argued by the parties, presented for determination, and passed upon by the court. While we are of the view that the latter statement amounts only to a conclusion which could not be conclusive of the jurisdictional issue under the Constitution, or be effective to make the decree one which "directly passes on the validity" of a statute in the absence of a record basis for this conclusion, it nevertheless appears that the certificate of the court is in terms an effort to make the record speak the truth, and to enable this Court to determine whether it has jurisdiction of this cause; under the prevailing liberal rules in this respect it should be regarded as effective for this purpose.[6]
Under the principles governing this constitutional concept, then, we are of the opinion that a decision on the validity of the act was necessary to a determination of this cause, and that, therefore, such a finding was inherent in the opinion and judgment of the court. The regulations upheld, provided by the appellee Authority through the zoning board created pursuant to Chapter 333, were dependent upon that law for their validity and authority.
The statute must, upon thorough consideration, be sustained against the attack upon it. The action of the trial court, in rejecting the appellants' contention in this respect, is hereby affirmed upon the merits. While the point is not so well settled as to reduce appellants' argument to a merely colorable assertion,[7] earlier opinions of this Court clearly indicate that, because of their limited area of activity, administrative authorities such as those provided for under the act in question are not within the purview of Section 27, Article III, supra.[8]
Paragraph 8 of the final decree reads, inter alia: "* * * it appears to the court that the defendants have failed to avail themselves of, much less exhaust, the administrative remedies which were prescribed for them by the airport zoning regulations and for this reason the defendants have no standing in this court to question the reasonableness of the height limits prescribed by the airport zoning regulation." The case was not decided on this point alone. Nevertheless the Airport Authority argues that the trial court was correct in its view of the matter above quoted and that this alone requires that this appeal be disposed *443 of adversely to the contentions of the appellants.[9]
There is substance to the argument of the Airport Authority that the rule which requires the exhaustion of administrative remedies is equally persuasive whether the issue is raised by the defending or the moving party.[10] It is unnecessary, however, for us to now decide whether this court will align itself with this view. The Airport Authority might well have proceeded in this litigation upon the theory that the appellants had not exhausted their administrative remedies in applying for a modification of the regulation[11] as it related to this building and might have prayed for an order enjoining the construction of said building until the appellants had proceeded with and exhausted such remedies. The Airport Authority, however, did not pursue this course but chose to place squarely in issue the question of the validity and reasonableness of the regulations established by it. Having chosen this course, the authority will not now be permitted to urge the proposition.[12] To that extent, therefore, we must disapprove the quoted portion of paragraph 8 of the final decree.
There is no longer any question concerning the power of the Legislature to authorize agencies of the government to adopt and enforce zoning regulations. We can think of no situation which more clearly authorizes the exercise of this phase of the police power than that involved here.[13] Such regulations not only promote the general welfare of the state and community served but contribute to the proper and orderly development of land areas in the vicinity of airports. Such regulations stabilize values and provide safety to those who use the airport facilities in taking off and landing as well as those living in the vicinity thereof. In many cases this Court has upheld the exercise of the police power by counties and municipalities in the enactment of zoning regulations restricting height, number of stories, size of buildings and other structures, percentage of lots that may be occupied, the size of courts and other spaces, the density of population and the location of buildings and structures and land and water for trade, industry and other purposes. There has been much litigation in the field of zoning, particularly in Florida, and the jurisprudence in that field has been extensively developed. These well settled principles now so firmly established with reference to municipal and county zoning apply equally to airport zoning.
Zoning regulations duly enacted pursuant to lawful authority are presumptively valid and the burden is upon him who attacks such regulation to carry the extraordinary burden of both alleging and proving that it is unreasonable and bears no substantial relation to the public health, safety, morals or general welfare.[14] Courts will not substitute their judgment as to the reasonableness of a particular rule or regulation where such has been duly adopted *444 pursuant to lawful authority when such reasonableness is fairly debatable. This latter principle has become so well established in the law of zoning that it has been appropriately labelled with the designation the "fairly debatable" rule.[15]
Appellants' brief is principally a review of the evidence taken before the able chancellor on the basis of which he decreed that the subject regulation was reasonable and enjoined its violation.
The building of appellants is located in an area lying considerably to one side of the extended center line of one of the principal runways of the airport, such area being designated on the official airport zoning plat as T-1. In this area, which does not lie directly in the path of any runway but considerably to the side of the direct approach area, the regulations provide that the height of buildings shall not exceed 175 feet. In other words, beginning at the edge of zone T-1 nearest the end of the runway, buildings may be constructed on an ascending height from such point outward on a slope of one foot in vertical height to every seven feet of ground surface or a 7 to 1 grade with a maximum height of 175'. At the point in zone T-1 where the appellants' building is located, the permissible height is 27.64 feet above ground level.
Appellant Harrell Candy Kitchen, Inc.[16] commenced constructing the subject building without having obtained a permit from the airport authorities so to do. After the building was well underway the airport authority discovered that the maximum height would be 41 feet above the level of the surrounding ground or 13.36 feet higher than that permitted at that location. The excess height of the building was occasioned by an ornamental roof extending to a peak considerably above the extreme height of the remainder of the building[17] which was to be used primarily for ornamental and advertising purposes. The record establishes and the trial court found that while the use of such portion of the building was beneficial to the operation of the main building, it could not be said that it was essential to it.[18]
The nub of this case is therefore whether the regulation restricting the height of this building is reasonable. Appellants argue that it is unreasonable and deprives them of the substantial, beneficial use of their property.[19]
The airport zoning regulations involved in this suit conform in all details to the airport approach standards compiled by the Civil Aeronautics Administration of the United States. These standards are the result of many years of experience by the *445 outstanding experts in the field of aviation and a compliance therewith is a condition precedent to federal aid in airport construction. The evidence is conflicting in some respects but when analyzed in the light most favorable to the appellants, the least that can be said is that the reasonableness of the height limitation imposed is fairly debatable. This conclusion is plainly justified by appellants' own witnesses. On a direct question to one of them as to what height structure he would permit in the area, he said "I think that I could safely recommend a 50 foot height at that particular point." Similar statements were made by other witnesses for appellants while appellee's witnesses were unequivocal in their views that the regulation was reasonably necessary to the safe operation of planes using the airport.
The restriction in question as applied to this particular property cannot be said to deprive the owner of the beneficial use of his land to such an extent that it violates the constitutional prohibition in this respect or is otherwise unlawful.
We are concerned in this case only with the validity of the act creating this board and authorizing the adoption of the zoning regulations and the question of whether this particular regulation as it affects these appellants' property is valid. As in other zoning cases, each issue must be decided as it arises. Whether other rules or regulations enacted by this Authority are valid depends upon the facts in each particular case, and the courts have long since found that no rule can be made to fit all cases.
Except as herein determined, the decree appealed from is hereby
Affirmed.
TERRELL, C.J., and HOBSON, ROBERTS, and O'CONNELL, JJ., concur.
THOMAS, J., dissents with opinion.
THORNAL, J., disqualified.
THOMAS, Justice (dissenting).
Under the provisions of Sec. 4, Art. V, of the constitution, as amended 6 November 1956, this court has jurisdiction of "final judgments or decrees directly passing upon the validity of a state statute * *." (Italics supplied.) This is the only provision dealing with jurisdiction that is relevant to that phase of this case.
There is no reference in the final decree to the constitutionality or unconstitutionality of a state statute. Actually, it is written in the majority opinion that "[t]he court below, in making its ruling, did not explicitly rule upon the validity of the act * *." (Italics supplied.) Moreover none of the questions posed by the appellants presents the question of the validity or invalidity of a statute. On the contrary one of the questions constitutes a charge that certain zoning regulations, the principal targets of the attack in the chancery court, were not reasonable "as required by Chapter 333" the law now said to have been tested.
Several weeks after oral argument of the case, the chancellor sent to this court a certificate that he had passed directly on the validity of Chapter 333, supra, which certificate he said, in an accompanying letter, he had been "requested by counsel" in the case to furnish.
I cannot agree with the disposition of the case by this court because in my opinion it is a usurpation of the power of the District Court of Appeal.
Furthermore, I cannot agree that a jurisdictional feature may be established in a record here, nunc pro tunc, long after the record and briefs have been filed and argument has been heard, even though counsel, supposedly for all parties, made the request. No reference to authority is needed for the position that the District Court of Appeal may not be deprived of jurisdiction and that jurisdiction vested in this court by agreement of counsel.
So I vigorously, albeit respectfully, dissent.
NOTES
[1] Pertinent provisions of the law are, in part:

"333.03 Power to adopt airport zoning regulations
"(1) In order to prevent the creation or establishment of airport hazards, every political subdivision having an airport hazard area within its territorial limits may adopt, administer, and enforce, under the police power and in the manner and upon the conditions hereinafter prescribed, airport zoning regulations for such airport hazard area, which regulations may divide such area into zones, and, within such zones, specify the land uses permitted and regulate and restrict the height to which structures and trees may be erected or allowed to grow.
"(2) Where an airport is owned or controlled by a political subdivision, and any airport hazard area appertaining to such airport is located wholly or partly outside the territorial limits of said political subdivision, the political subdivision owning or controlling the airport and the political subdivision within which the airport hazard area is located, may, by ordinance or resolution duly adopted, create a joint airport zoning board, which board shall have the same power to adopt, administer and enforce airport zoning regulations applicable to the airport hazard area in question as that vested in subsection (1) in the political subdivision within which such area is located. Each such joint board shall have as members two representatives appointed by each political subdivision participating in its creation and in addition a chairman elected by a majority of the members so appointed."
"333.10 Board of adjustment
* * * * *
"(2) Where a zoning board of appeals or adjustment already exists, it may be appointed as the board of adjustment. Otherwise, the board of adjustment shall consist of five members, each to be appointed for a term of three years by the authority adopting the regulations and to be removable by the appointing authority for cause, upon written charges and due notice and after public hearing."
[2] Section 4, Article V, Florida Constitution, F.S.A.
[3] Evans v. Carroll, Fla., 104 So.2d 375, at page 377.
[4] Ibid. at page 378.
[5] "The Legislature shall provide for the election by the people or appointment by the Governor of all State and county officers not otherwise provided for by this Constitution, and fix by law their duties and compensation."
[6] Mingo v. Cain, 160 Fla. 254, 34 So.2d 456; Rule 3.6, subd. l, Fla., App.Rules, 31 F.S.A. 4A C.J.S. Appeal & Error § 1116; Rule 1.15(b), Fla.Rules of Civil Procedure, 30 F.S.A.; Southern Liquor Distributors, Inc. v. Kaiser, 150 Fla. 52, 7 So.2d 600, 602; State v. Bruno, Fla. 1958, 104 So.2d 588.
[7] See Evans v. Carroll, supra, 104 So.2d at page 378.
[8] State v. Escambia County, Fla., 52 So.2d 125; Town of Palm Beach v. City of West Palm Beach, Fla., 55 So.2d 566, 569 and the authorities there cited.
[9] See infra, note 12.
[10] 73 C.J.S. Public Administrative Bodies and Procedure § 41, p. 352; United States v. Fritz Properties, D.C., 89 F. Supp. 772, 779; United States v. Lillard, D.C., 143 F. Supp. 113, 119. Also see Provo City v. Claudin, 1936, 91 Utah 60, 63 P.2d 570 and Payne v. Borough of Sea Bright, 1936, 187 A. 627, 14 N.J. Misc. 756.
[11] Sec. 333.07(2), F.S.A. Sec. 9.10 of the regulations also provides for appeal to Airport Zoning Board of Adjustment if an application for permit to increase height of building is denied by the Zoning Board.
[12] Cf. Florida State Racing Commission v. McLaughlin, Fla. 1958, 102 So.2d 574, 577.
[13] Seaboard Air Line R. Co. v. Peters, Fla. 1949, 43 So.2d 448, 453.
[14] City of Miami Beach v. Silver, Fla. 1953, 67 So.2d 646; Miami Beach United Lutheran Church of the Epiphany v. City of Miami Beach, Fla. 1955, 82 So.2d 880; City of Miami Beach v. Wiesen, Fla. 1956, 86 So.2d 442.
[15] City of Miami Beach v. Wiesen, supra, note 14; City of Miami Beach v. Lachman, Fla. 1954, 71 So.2d 148; Euclid, Ohio v. Ambler Realty Co., 1926, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303.
[16] This appellant is the lessee of the lands. The remaining appellants are the lessors, owners of the fee.
[17] The height of the main building was slightly less than eleven feet.
[18] The specific finding of the trial court was:

"Defendants failed to substantiate their contention that the enforcement of the height limitation in the Airport Zoning Regulations would amount to an unlawful taking of the property in controversy. The primary function of the tower portion of the structure was purely for advertisement and to give aesthetic character to the building and any other functional purpose of the tower could be accommodated equally as well under the 10.5 foot basic roof of the structure. There was no showing that a reduction in the height of the tower to conform to the zoning height limitation would (1) depreciate the value of Defendant's property, (2) adversely affect the appearance of the structure, and the evidence was inconclusive as to whether such reduction would reduce the effectiveness of the tower as an advertising media."
[19] See State ex rel. Taylor v. City of Jacksonville, 1931, 101 Fla. 1241, 133 So. 114; City of Miami v. Rosen, 1942, 151 Fla. 677, 10 So.2d 307; City of Miami v. Romer, Fla. 1952, 58 So.2d 849; Mayer v. Dade County, Fla. 1955, 82 So.2d 513.