**Enola ECK, Plaintiff and Appellant,**

v.

**CITY OF BISMARCK, a Municipal Corporation, Defendant and Appellee.**

**Civ. No. 9607.**

Supreme Court of North Dakota.

Aug. 22, 1979.

Alan C. Erickson, of Sperry & Erickson, and William S. Murray, Bismarck, for plaintiff and appellant.

John A. Zuger, City Atty., Bismarck, for defendant and appellee.

VANDE WALLE, Justice.

Mrs. Enola Eck brought an action for inverse condemnation against the City of Bismarck in the district court. She contended that because the City enacted, and subsequently refused to amend, a zoning ordinance limiting her use of her property to agricultural purposes, the City must pay her the reasonable value of her land.[1]

For many years, Mrs. Eck has owned land approximately one mile from Bismarck in Apple Creek Township, Burleigh County, North Dakota. Apple Creek Township zoned the land for agricultural use. In April 1978, exercising extraterritorial zoning powers pursuant to Section 40–47–01.1, N.D.C.C., the City of Bismarck enacted Ordinance No. 3554.[2] Through this ordinance, the City continued the agricultural-use limitation on Mrs. Eck's property originally created by Apple Creek Township. Mrs. Eck attended the meeting of the Bismarck Board of City Commissioners at which the ordinance was enacted.

---

1. In her complaint, Mrs. Eck also prayed that the City be required to pay her exemplary damages.

2. Bismarck, N. Dak., Ordinance No. 3554, "AN ORDINANCE TO AMEND AND RE–ENACT SECTION 15.0204, APPENDIX A, OF THE 1973 CODE OF ORDINANCES OF THE CITY OF BISMARCK, NORTH DAKOTA, AS AMENDED, RELATING TO THE BOUNDARIES OF ZONING DISTRICTS" (April 11, 1978), provides, in pertinent part:

"Section 1. *Amendment.* Section 15.-0204, Appendix A, of the 1973 Code of Ordinances of the City of Bismarck, North Dakota, is hereby amended and re-enacted to read as follows:
"The following described property shall be excluded from County Agricultural District and included within City Agricultural District:

"All Section 6, except the NW¼ and except the northernmost 260 feet."

In June 1978, Mrs. Eck filed with the Bismarck Planning and Zoning Commission an application requesting a change of zoning for her property from agricultural use to single-family residential use and approval of a subdivision of 126 acres of her property into 45 residential lots. The Planning and Zoning Commission denied her application in August 1978. In late August 1978, Mrs. Eck "appealed" the denial of her application to the Bismarck Board of City Commissioners. The Board conducted a public meeting at which Mrs. Eck, through her attorneys, appeared and presented witnesses. In October 1978, the Board of City Commissioners denied Mrs. Eck's application for rezoning and subdivision and refused to amend Ordinance No. 3554 because, in its words:

"1) Zoning request did not appear to be compatible with the present and future land uses in the area.

"2) Requested zoning did not comply with the recommendations of the off-airport land use study.

"3) Soil Conservation Service had categorized this property as good productive agricultural land.

"4) To promote the health, safety, and general welfare of the public."

Mrs. Eck then commenced this action for inverse condemnation against the city.[3] The City moved to dismiss on the ground that Mrs. Eck's complaint failed to state a claim upon which relief can be granted. See Rule 12(b), N.D.R.Civ.P. The district court granted the City's motion.

Mrs. Eck appeals the district court's decision to this court, raising the following issues:

1. Did the district court, after considering affidavits and exhibits offered by the parties, err in treating the City's motion as a motion to dismiss rather than a motion for summary judgment?

2. Is inverse condemnation the appropriate action through which to challenge the validity of a zoning ordinance?

3. Apart from an action for inverse condemnation, are other legal remedies available to challenge the validity of a zoning ordinance?

I

We have already stated that, even though the parties presented affidavits and exhibits outside the pleadings to the court and these materials were not excluded, the district court granted the City's motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b), N.D.R.Civ.P., requires, in part:

"If, on a motion asserting the defense numbered (5) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

Mrs. Eck argues that since both parties presented matters outside the pleadings to the court and agreed that the motion to dismiss became one for summary judgment, the motion is still pending before the district court. In any event, she argues, if the district court in fact treated the motion as one for summary judgment, it improperly granted that motion because the matters outside the pleadings presented to the court establish the existence of genuine issues as to material facts.

We agree that, as Rule 12(b), N.D.R.Civ.P., required, the district court should have treated the City's motion as one for summary judgment. But to review the district court's disposition of the motion, we disregard the label it used to announce its decision and, instead, look to the substance of that decision. See, e. g., *Slope County v. Consolidation Coal Co.*, 277 N.W.2d 124 (N.D.1979); *Rummel v. Rummel*, 265 N.W.2d 230 (N.D.1978); see also *Allstate*

---

3. The Legislature has not authorized a statutory appeal to the district court from adverse zoning decisions made by a board of city commissioners.

*Ins. Co. v. Knutson*, 278 N.W.2d 383 (N.D. 1979). The record indicates that the district court allowed each party a reasonable opportunity to present material pertinent to the motion, and that the requirements of Rule 56, N.D.R.Civ.P., were satisfied. Hence, we conclude that irrespective of the terms used by the district court, it in fact treated and disposed of the motion as one for summary judgment.

We need not address Mrs. Eck's contention that, here, summary judgment was improper because genuine issues of material fact remained unresolved. In *Sande v. City of Grand Forks*, 269 N.W.2d 93, 98 (N.D. 1978), we said:

> "[E]ven where there are factual disputes between the parties, we have affirmed a summary judgment if the law is such that the resolution of the factual dispute will not change the result, which is foreordained by applicable statute or precedent. *Schoonover v. Morton County*, 267 N.W.2d 819 (N.D.1978)."

As discussed in part II of this opinion, our resolution of the second issue—whether inverse condemnation is an appropriate action to challenge the validity of a zoning ordinance—has foreclosed Mrs. Eck's attempt to bring this action, apart from any remaining factual issues.

## II

 The State, acting through its police power, has broad authority to enact land-use regulations without compensating a property owner for the restrictions placed on the use of his property. E. g., *Euclid v. Ambler Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); *City of Bismarck v. Hughes*, 53 N.D. 838, 208 N.W. 711 (1926). A zoning ordinance, one type of land-use regulation, will withstand constitutional scrutiny even though it diminishes the val-

ue of the regulated property [Nichols on *Eminent Domain*, § 1.42[10] (rev. 3d ed. 1976 & Supp. 1979); Yokley, *Zoning Law and Practice*, § 2–21 (3d ed. 1965 & Cum. Supp.1976)], or disallows a use that the property owner considers to be the most valuable use of his property [see, e. g., *Newman Signs, Inc. v. Hjelle*, 268 N.W.2d 741 (N.D.1978), *appeal dismissed* 440 U.S. 901, 99 S.Ct. 1205, 59 L.Ed.2d 449 (1979)]. Nevertheless, the State's power to zone is not boundless. A zoning ordinance must be reasonable: Courts will invalidate a zoning ordinance that bears no reasonable relationship to a legitimate governmental purpose, that is arbitrary, or that deprives a property owner of all or substantially all reasonable uses of his land. See *Newman Signs, Inc. v. Hjelle, supra*; *Fred F. French Inv. Co., Inc. v. City of New York*, 39 N.Y.2d 587, 385 N.Y.S.2d 5, 350 N.E.2d 381 (1976).

 Through its power of eminent domain, the State has the authority to "take" or "damage" private property for public use so long as it compensates the private property owner for the taking or damaging. Sec. 14, N.D.Const.[4] For the most part, the State effectuates the taking or damaging by acquiring the property owner's property through eminent-domain proceedings. See, e. g., *United Power Assn. v. Heley*, 277 N.W.2d 262 (N.D.1979). When the State takes or damages private property without first commencing eminent-domain proceedings, in order to obtain "just compensation" the property owner must take the initiative by commencing an action for inverse condemnation. See, e. g., *Filler v. City of Minot*, 281 N.W.2d 237 (N.D.1979); *Gram Const. Co. v. Minneapolis, St. P. & S. S. M. Ry. Co.*, 36 N.D. 164, 161 N.W. 732 (1917). An allegation of mere reduction in the market value of property, however, cannot

---

4. Section 14, N.D.Const., provides, in part:

 "Private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the owner."

 We do not discuss the Fifth Amendment, U.S.Const., made applicable to the States by the Fourteenth Amendment, U.S.Const., as Mrs. Eck relies primarily on Section 14, N.D.

Const. Because the scope of Section 14, N.D. Const., is broader than that of the Fifth Amendment [see *King v. Stark County*, 67 N.D. 260, 271 N.W. 771 (1937); *but see* Hagman, *Urban Planning and Land Development Control Law*, § 179 at 321 (1971)], if we were to apply the Fifth Amendment, we would reach the same result in Mrs. Eck's appeal.

serve as the basis for an action for inverse condemnation. *HFH, Ltd. v. Superior Court of Los Angeles County*, 15 Cal.3d 508, 125 Cal.Rptr. 365, 542 P.2d 237 (1975); cf., *United Power Assn. v. Heley, supra*, 277 N.W.2d at 266–267.

Clear in theory but often cloudy in application, the distinction between the State's police power and its power of eminent domain has troubled this court in the past. As we said in *Newman Signs, Inc. v. Hjelle, supra*:

> "The characterization of the State's action as a noncompensable regulation under the police power as opposed to a compensable taking under the power of eminent domain is not susceptible to any easy formulation, but, rather, often turns on difference of degree. *Goldblatt v. Hempstead*, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962). Both involve some curtailment of private property rights." 268 N.W.2d at 755.

Mrs. Eck has assaulted the City's zoning ordinance contending that it is based in part on an unconstitutional exercise of the police power and in part on a taking or damaging without just compensation. First, she argues that the City's enactment of Ordinance No. 3554, limiting the use of her property to agricultural purposes, and the City's subsequent failure to amend the ordinance so as to allow single-family residential use of the property, deprived her of all reasonable uses of her property. Had this been the sole theory upon which she based her action, this case might be viewed in a different light. To remedy what she feels is unconstitutional action, however, Mrs. Eck has chosen to bring an action for inverse condemnation. The City's conduct, to paraphrase her words, constituted a taking or damaging of her property in viola-

tion of Section 14, Constitution of North Dakota, and entitles her to "just compensation."

■ We cannot agree with the second step in Mrs. Eck's analysis. A city might undertake action such as the enactment of an unconstitutional zoning ordinance that, if challenged in an action for declaratory relief or if interposed as a defense in an enforcement action, would be voided by a court as an unconstitutional exercise of the city's police power. Yet a city's improper action does not, in all cases, become an exercise of its power of eminent domain entitling the private property owner to an action in inverse condemnation.[5] Although in some cases this might be the result, in Mrs. Eck's case it is not.

This court has enunciated the contours of an action for inverse condemnation many times. For example, in *Jamestown Plumbing & Heating Co. v. City of Jamestown*, 164 N.W.2d 355 (N.D.1969), we stated:

> "We have held on numerous occasions that under this constitutional provision the owner may maintain an action to recover damages for the taking of his property and for consequential damages to his property resulting from a public use.
>
> "We said in *Donaldson v. City of Bismarck*, 71 N.D. 592, 3 N.W.2d 808, 817 (1942):
>
> > " 'The provisions of Section 14 of the Constitution are not restricted to eminent domain proceedings. They are applicable as well where private property has been taken or damaged without the consent of the owner, and where no condemnation proceeding has been brought. It is well settled that in such case the constitutional guarantee may

---

5. Many legal writers have discussed this issue. E. g., Costonis, " 'Fair' Compensation and the Accommodation Power: Antidotes for the Taking Impasse in Land Use Controversies," 75 Colum.L.Rev. 1021 (1975); Kanner, "The Consequences of Taking Property by Regulation," 24 Prac.Law (No. 3) 65 (1978); Note, "Inverse Condemnation: The Case for Diminution in Property Value as Compensable Damage," 28 Stan.L.Rev. 779 (1976); Note, "Inverse Con-

demnation: Its Availability in Challenging the Validity of a Zoning Ordinance," 26 Stan.L.Rev. 1439 (1974); Comment, " 'Takings' Under the Police Power—The Development of Inverse Condemnation as a Method of Challenging Zoning Ordinances," 30 Sw.L.J. 723 (1976); Comment, "Limiting the Availability of Inverse Condemnation as a Landowner's Remedy for Downzoning," 13 Urb.L.Ann. 263 (1977).

be invoked, and the owner may maintain an action to recover just compensation for the property taken or the damage inflicted.'

. . . . .

"We have said that under § 14 of the North Dakota Constitution the obligation of the state to pay just compensation to the owner for the taking of or for damages to his property is, in effect, a contract to compensate for the damages. When the state takes or damages private property 'there is an implied promise to make the required compensation.' *Schilling v. Carl Township, Grant County*, 60 N.D. 480, 235 N.W. 126, 131." 164 N.W.2d at 358.

In *King v. Stark County*, 67 N.D. 260, 271 N.W. 771 (1937), we discussed the nature of a taking or damaging sufficient to sustain an action for inverse condemnation:

"It is not necessary that there be a direct injury to the property itself in order to create this liability. It is sufficient to warrant a recovery if there be 'some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally.' *Rigney v. City of Chicago* [102 Ill. 64], *supra* ; *Mason City, etc., Railway Company v. Wolf*, 148 F. 961, 78 C.C.A. 589." 67 N.D. at 265–266, 271 N.W. at 774.

Consistent with *King v. Stark County, supra*, in every North Dakota case concerning an action for inverse condemnation that the parties have cited to us, and that our research has revealed, the alleged taking or damaging resulted from a *direct physical disturbance* of a right, either public or private, that the property owner enjoyed in connection with his property. E. g., *Filler v. City of Minot, supra* —construction of controlled-access intersection; *Guerard v. State*, 220 N.W.2d 525 (N.D.1974)—closing of intersection; *Maragos v. City of Minot*, 191 N.W.2d 570 (N.D.1971)—construction of

viaduct and reconstruction of intersection; *Jamestown Plumbing & Heating Co. v. City of Jamestown, supra* —improvement of street; *Wilson v. City of Fargo*, 141 N.W.2d 727 (N.D.1965)—construction of dike; *Northern Pacific Railway Co. v. Morton County*, 131 N.W.2d 557 (N.D.1964)—construction of road; *Kenner v. City of Minot*, 98 N.W.2d 901 (N.D.1959)—change in natural and established grade of road; *Little v. Burleigh County*, 82 N.W.2d 603 (N.D.1957) —reconstruction of highway grade; *Kinnischtzke v. City of Glen Ullin*, 79 N.D. 495, 57 N.W.2d 588 (1953)—operation of sewerage system and cesspool; *Conlon v. City of Dickinson*, 72 N.D. 190, 5 N.W.2d 411 (1942) —disposal of sewage in river; *Messer v. City of Dickinson*, 71 N.D. 568, 3 N.W.2d 241 (1942)—disposal of sewage in river; *Donaldson v. City of Bismarck*, 71 N.D. 592, 3 N.W.2d 808 (1942)—establishment and operation of public dump; *Hamilton v. City of Bismarck*, 71 N.D. 321, 300 N.W. 631 (1941) —overflow of sanitary sewer through manhole outlet; *Jacobson v. State of North Dakota, Department of State Highways*, 68 N.D. 259, 278 N.W. 652 (1938)—change of grade of road; *King v. Stark County, supra* —construction and improvement of highway; *Mayer v. Studer & Manion Co.*, 66 N.D. 190, 262 N.W. 925 (1935)—construction of culvert and grade on public highway; *Schilling v. Carl Tp., Grant County*, 60 N.D. 480, 235 N.W. 126 (1931)—"laying out" of road; *Gram Const. Co. v. Minneapolis, St. P. & S. S. M. Ry. Co., supra* —construction and operation by railroad of spur track. In these cases, each governmental entity went beyond mere regulation of the use of private property; instead, through physical activity such as the construction of public improvements or disposal of waste, it disturbed property rights belonging to private property owners. It is apparent, therefore, that to allow Mrs. Eck an action for inverse condemnation based solely on the City's enactment of, and refusal to amend, Ordinance No. 3554 would be a significant extension of the North Dakota case law relating to inverse condemnation. We decline to make that extension in this case.

In *Agins v. City of Tiburon*, 24 Cal.3d 266, 157 Cal.Rptr. 372, 598 P.2d 25 (1979), the California Supreme Court faced an issue similar to the one confronting us. Holding that inverse condemnation is an inappropriate and undesirable action in cases in which unconstitutional regulation is alleged, the court said:

"In the half century since *Euclid* the foregoing abstract principles under the force of experience have coalesced into a specific functional requirement. Community planners must be permitted the flexibility which their work requires. As we ourselves have recently observed, 'If a governmental entity and its responsible officials were held subject to a claim for inverse condemnation merely because a parcel of land was designated for potential public use on one of these several authorized plans, the process of community planning would either grind to a halt, or deteriorate to publication of vacuous generalizations regarding the future use of land.' (*Selby Realty Co. v. City of San Buenaventura* (1973) 10 Cal.3d 110, 120, 109 Cal.Rptr. 799, 805, 514 P.2d 111, 117.)

"Other commentators have recognized that the utilization of an inverse condemnation remedy would have a chilling effect upon the exercise of police regulatory powers at a local level because the expenditure of public funds would be, to some extent, within the power of the judiciary. 'This threat of unanticipated financial liability will intimidate legislative bodies and will discourage the implementation of strict or innovative planning measures in favor of measures which are less stringent, more traditional, and fiscally safe.' (Hall, *Eldridge v. City of Palo Alto: Aberration or New Direction in Land Use Law?* (1977) 28 Hastings L.J. 1569, 1597.)

"We envisage that the availability of an inverse condemnation remedy in these situations would pose yet another threat to legislative control over appropriate land-use determinations. It has been noted that 'The weighing of costs and benefits is essentially a legislative process. In enacting a zoning ordinance, the legislative body assesses the desirability of a program on the assumption that compensation will not be required to achieve the objectives of that ordinance. Determining that a particular land-use control requires compensation is an appropriate function of the judiciary, whose function includes protection of individuals against excesses of government. But it seems a usurpation of legislative power for a court to force compensation. Invalidation, rather than forced compensation, would seem to be the more expedient means of remedying legislative excesses.' (Fulham & Scharf, *Inverse Condemnation: Its Availability in Challenging the Validity of a Zoning Ordinance* (1974) 26 Stan.L.Rev. 1439, 1450–1451; see also Bowden, *Legal Battles on the California Coast: A Review of the Rules* (1974) 2 Coastal Zone Management J. 273.)

"Other budgetary consequences reveal themselves when the land use control is exercised by means of the initiative. 'Legislation in the nature of zoning can be and has been enacted by the people through a direct initiative. Are the voters, through the initiative power, also to have this unwelcome power to *inadvertently* commit funds from the public treasury? The logical extension of requiring compensation for the mere enactment of a harsh zoning measure indicates that the answer would be in the affirmative. The potential for fiscal chaos would be great if this were the result.' (28 Hastings L.J., supra, at p. 1598, emphasis in original.)" 24 Cal.3d at 275–76, 157 Cal.Rptr. at 377–78, 598 P.2d at 30.[6]

■ We agree that the potential consequences of an action for inverse condemnation militate against its availability to challenge the constitutionality of governmental

---

**6.** For similar results, see *Davis v. Pima County*, 121 Ariz. 343, 590 P.2d 459 (1978), *cert. denied* —— U.S. ——, 99 S.Ct. 2885, 61 L.Ed.2d 312 (1979); *Gold Run, Ltd. v. Board of County Commissioners*, 38 Colo.App. 44, 554 P.2d 317 (1976); *Mailman Development Corp. v. City of Hollywood*, 286 So.2d 614 (Fla.App.1974).

regulation. If actions for inverse condemnation loom in the future, land-use planning might be stymied, the fiscal-budgetary process chaotic, and the financial burdens on the community staggering. Most important, authorization of such an action would enable North Dakota courts to sit as legislative bodies doling out the State and local fisc.

We do not suggest, however, as did the California Supreme Court, that inverse condemnation is never an appropriate action through which to attack an unconstitutional zoning ordinance that forbids substantially *all* use of regulated property. When, through a regulation, a governmental entity displaces "private ownership, occupation or management" of a property interest, inverse condemnation might be appropriate. *Fred F. French Inv. Co., Inc. v. City of New York, supra,* 39 N.Y.2d at 595, 385 N.Y.S.2d at 10, 350 N.E.2d at 386; *Holaway v. City of Pipestone,* Minn., 269 N.W.2d 28 (1978). For example, a zoning ordinance dissembling a governmental entity's desire to acquire an easement while effectively accomplishing that result without affording the property owner "just compensation" might be attacked in this manner. The facts in this case do not present us with this situation.

■ There is some evidence in the record to indicate that a possible reason for the City's refusal to amend the zoning ordinance governing Mrs. Eck's property was to preclude land uses inconsistent with future flight patterns to and from the Bismarck Municipal Airport. Nonetheless, absent a land-use regulation exceedingly onerous on

its face,[7] actual physical conduct inconsistent with the property rights of the landowner,[8] or governmental precondemnation regulatory activity designed to facilitate subsequent eminent-domain proceedings,[9] an action for inverse condemnation is inappropriate to challenge the validity of a zoning ordinance. See *HFH, Ltd. v. Superior Court of Los Angeles County, supra,* 15 Cal.3d at 516, n. 14, 125 Cal.Rptr. at 371, n. 14, 542 P.2d at 243, n. 14.

### III

Mrs. Eck seems to argue that an action for inverse condemnation is the only legal remedy available to her to challenge Ordinance No. 3554. We disagree.

■ Because it is not our function to devise legal strategy for litigants, we will note only one legal course open to Mrs. Eck—an action for declaratory judgment. See Chap. 32–23, N.D.C.C. See also, e. g., *Park District City of Fargo v. City of Fargo,* 129 N.W.2d 828 (N.D.1964); *Iverson v. Tweeden,* 78 N.D. 132, 48 N.W.2d 367 (1951); *Langer v. State,* 69 N.D. 129, 284 N.W. 238 (1939); *G. W. Jones Lumber Co. v. City of Marmarth,* 67 N.D. 309, 272 N.W. 190 (1937).

"The Declaratory Judgments Act is intended to provide a method whereby parties to a justiciable controversy may have such controversy determined by a court in advance of any invasion of rights, or breach of obligation." *Langer v. State, supra,* 69 N.D. at 141, 284 N.W. at 244.

An action for declaratory judgment would resolve the issue of the validity of

7. E. g., *Sneed v. County of Riverside,* 218 Cal. App.2d 205, 32 Cal.Rptr. 318 (1963)—plaintiff brought an inverse condemnation action alleging that rather than acquiring an air-navigational easement, a county enacted a zoning ordinance forbidding any structure or vegetation more than three inches high and proceeded to operate flights over the plaintiff's property.

8. E. g., *Sneed v. County of Riverside, supra;* *Martin v. Port of Seattle,* 64 Wash.2d 309, 391 P.2d 540 (1964), *cert. denied* 379 U.S. 989, 85 S.Ct. 701, 13 L.Ed.2d 610 (1965)—plaintiff alleged a taking or damaging caused by nearby low-altitude flights of jet aircraft landing and

taking off; *Ackerman v. Port of Seattle,* 55 Wash.2d 400, 348 P.2d 664, 77 A.L.R.2d 1344 (1960)—plaintiff alleged a taking or damaging caused by the use of his property as an approach way for airplanes landing or taking off.

9. E. g., *Klopping v. City of Whittier,* 8 Cal.3d 39, 104 Cal.Rptr. 1, 500 P.2d 1345 (1972)—plaintiff alleged City made public announcement that it would acquire his land, and because subsequently it unreasonably delayed initiation of eminent-domain proceedings, property owner's land became commercially useless and declined in market value.

Ordinance No. 3554 without forcing Mrs. Eck to risk penalty by violating it and the City to risk payment of a substantial award of "just compensation." For these and other reasons, actions for declaratory judgment to determine the constitutionality of zoning ordinances are not uncommon. See, e. g., *City of Fargo, Cass County v. Harwood Township*, 256 N.W.2d 694 (N.D.1977). Clearly, then, an action for inverse condemnation was not Mrs. Eck's sole remedy.[10]

## CONCLUSION

We conclude that the district court properly disposed of Mrs. Eck's action for inverse condemnation. Yet, because these are issues of first impression, in the interest of justice we remand this case to the district court and direct it to afford Mrs. Eck an opportunity to amend her complaint or to pursue other legal remedies not inconsistent with this opinion.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.

**10.** Dismissing Mrs. Eck's action, the district court wrote:

> "Although this suit claims to be something else, it is nothing more than a collateral attack upon the decision not to re-zone. The appropriate remedy would have been to appeal from the decision of the City Commission. The plaintiff never pursued this remedy. In fact, at the time of the adoption of the initial ordinance, no objection was lodged. . . ."

We believe that by denominating Mrs. Eck's action a "collateral attack" and by referring to the remedy of "appeal" the district court held, consistent with our holding today, that Mrs. Eck should have used an action other than inverse condemnation to attack the validity of the zoning ordinance.