**Enola ECK, Plaintiff and Appellant,**

v.

**CITY OF BISMARCK, a Municipal Corporation, Defendant and Appellee.**

**Civ. No. 9607–A.**

Supreme Court of North Dakota.

Feb. 24, 1981.

Sperry & Erickson and William S. Murray, Bismarck, *for plaintiff and appellant;* argued by Floyd B. Sperry and Alan C. Erickson, Bismarck.

Zuger & Bucklin, Bismarck, for defendant and appellee; argued by John A. Zuger, Sr., Bismarck.

ERICKSTAD, Chief Justice.

Prior to commencing the action in the instant case, the plaintiff, Enola Eck, brought an action for inverse condemnation against the City of Bismarck in the District Court of Burleigh County. Upon motion by the city, the district court dismissed Mrs. Eck's action for failure to state a claim upon which relief could be granted. Mrs. Eck appealed from the judgment of dismissal, and in *Eck v. City of Bismarck*, 283 N.W.2d 193 (N.D.1979), we affirmed the judgment of dismissal but remanded with instructions that Mrs. Eck be allowed to amend her complaint to pursue legal remedies consistent with the Court's opinion. As a result of the *Eck, supra,* decision Mrs. Eck filed an amended complaint for a declaratory judgment declaring Zoning Ordinance No. 3554 unconstitutional and invalid and for an injunction against interference by the city with the construction of residential structures on Mrs. Eck's property. On September 3, 1980, the district court entered a judgment declaring the city zoning ordinance valid and dismissing Mrs. Eck's action against the city. Mrs. Eck has filed an appeal from that judgment with this Court. We affirm.

Many of the pertinent facts surrounding the present controversy have been succinctly set forth by Justice Vande Walle in *Eck v. City of Bismarck*, 283 N.W.2d 193 (N.D. 1979). Rather than reiterate those facts we refer the reader to the *Eck* decision.

Mrs. Eck has raised the following issues for this Court's determination on appeal:

(1) Whether or not the district court erred in refusing to grant Mrs. Eck a jury trial in this action;

(2) Whether or not the district court erred in its determination that the city zoning ordinance is a valid ordinance which is neither arbitrary nor unreasonable and which does not deprive Mrs. Eck of all or substantially all reasonable uses of her land;

(3) Whether or not the district court erred in refusing to admit certain evidence relating to the income and expenses of Mrs. Eck's farming operation; and

(4) Whether or not the district court erred in refusing to allow Mrs. Eck to testify as to the value of her property for residential purposes.

*Jury Trial*

Mrs. Eck asserts that it was error for the trial court to deny her a jury trial. We disagree. In her complaint, Mrs. Eck sought a declaratory judgment with regard to the validity of the zoning ordinance and also sought injunctive relief. Consequently, Mrs. Eck's action is equitable in nature, and she was not entitled to a jury trial as a matter of right. *See, Ask, Inc. v. Wegerle*, 286 N.W.2d 290 (N.D.1979), *Landers v. Goetz*, 264 N.W.2d 459 (N.D.1978), *C.I.T. Corporation v. Hetland*, 143 N.W.2d 94 (N.D.1966). In denying Mrs. Eck's request for a jury trial, the district court determined that "all relief requested and allowable is equitable, and determinations by a jury in an advisory capacity would be of no use to the Court." We conclude that the district court did not commit error in this regard.

*Zoning Ordinance Validity*

In *Eck v. City of Bismarck*, 283 N.W.2d 193 (N.D.1979), this Court discussed the standard upon which the validity of a zoning ordinance is determined:

"The State, acting through its police power, has broad authority to enact land-use regulations without compensating a property owner for the restrictions placed on the use of his property. *E. g., Euclid v. Ambler Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); *City of Bismarck v. Hughes*, 53 N.D. 838, 208 N.W. 711 (1926). A zoning ordinance, one type of land-use regulation, will withstand constitutional scrutiny even though it diminishes the value of the regulated property [Nichols on *Eminent Domain*, § 1.42[10] (rev. 3d ed. 1976 & Supp.1979); Yokley, *Zoning Law and Practice*, § 2–21 (3d ed. 1965 & Cum.Supp.1976)], or disallows a use that the property owner considers to be the most valuable use of his property [see, e. g., *Newman Signs, Inc. v. Hjelle*, 268 N.W.2d 741 (N.D.1978), *appeal dismissed* 440 U.S. 901, 99 S.Ct. 1205, 59 L.Ed.2d 449 (1979)]. Nevertheless, the State's power to zone is not boundless. A zoning ordinance must be reasonable: Courts will invalidate a zoning ordinance that bears no reasonable relationship to a legitimate governmental purpose, that is arbitrary, or that deprives a property owner of all or substantially all reasonable uses of his land. See *Newman Signs, Inc. v. Hjelle, supra*; *Fred F. French Inv. Co., Inc. v. City of New York*, 39 N.Y.2d 587, 385 N.Y.S.2d 5, 350 N.E.2d 381 (1976)." 283 N.W.2d at 197.

Thus, to withstand an attack on its validity, the zoning ordinance must bear a reasonable relationship to a legitimate governmental purpose and must not be arbitrary or capricious nor deprive a property owner of all or substantially all reasonable uses of the zoned land.

The zoning ordinance assailed by Mrs. Eck continues the agricultural use limitation on her property. The Board of City Commissioners refused to amend the ordinance, upon application by Mrs. Eck, to allow single family residential use of her property. Mrs. Eck asserts that the zoning ordinance is invalid because it is arbitrary and capricious and because it exceeds legitimate police power regulation.

During 1974, a Master Plan of the Bismarck Municipal Airport was adopted by the Board of City Commissioners which included plans for a new runway at the airport to be located in a northeast-southwest direction. William C. Wocken, director of the City of Bismarck-Burleigh County Planning Department, testified that the distance between the northeast end of the proposed runway and the southwest corner of Mrs. Eck's property (the part which is nearest the proposed runway) would be 7,100 feet. According to an Off-Airport Land Study completed during May, 1976, and an Aircraft Noise Impact Analysis completed during December, 1979, Mrs. Eck's property, upon commencement of operations on the new runway, will lie within a 100 to 115 CNR noise zone within which, the studies report, residential development is undesirable.[1] It is undisputed that since completion of these studies the City Commission has not allowed any new residential zoning within the noise zones which encompass Mrs. Eck's property.

In denying Mrs. Eck's request for residential zoning, the Board of City Commissioners cited the following reasons:

"(1) Zoning request did no appear to be compatible with the present and future land uses in the area.

1. "CNR" is a designation for "Composite Noise Ratings" which are used for estimating aircraft noise impacts in the vicinity of airports. The Aircraft Noise Impact Analysis for the Bismarck Municipal Airport, completed in December, 1979, uses an "Ldn" noise rating system which is a designation for "day-night level." According to that analysis, upon commencement of operations on the new proposed runway, Mrs. Eck's property will lie within the 65 and 75 Ldn noise zones which is comparable to the 100 and 115 CNR noise zones within which her property was placed by the previous Off-Airport Land Study completed during May, 1976.

(2) Requested zoning did not comply with the recommendations of the off-airport land use study.

(3) Soil Conservation Service had categorized this property as good productive agricultural land.

(4) To promote the health, safety, and general welfare of the public."

■ The essential purpose of zoning is to "rationally coordinate land-use planning to promote orderly development and preservation of property values." *City of Fargo, Cass County v. Harwood Township,* 256 N.W.2d 694 (N.D.1977). Through the enactment of Section 40–47–01.1, N.D.C.C., the legislature provided enabling legislation for extraterritorial zoning by cities, to "enable cities to plan for the orderly development of their adjacent fringe areas." *Apple Creek Township v. City of Bismarck,* 271 N.W.2d 583 (N.D.1978). The zoning ordinance in the instant case appears to be a reasonable attempt by the city to provide an orderly development of areas within the city's zoning jurisdiction and to prohibit residential development in areas considered least suitable for such purpose.

Mrs. Eck relies substantially upon the recent Minnesota Supreme Court decision of *McShane v. City of Faribault,* 292 N.W.2d 253 (Minn.1980), to support her position that the city zoning ordinance in this case is invalid because it exceeds the City's legitimate police power zoning authority. In *McShane, supra,* the plaintiffs' owned land which was adjacent to the Faribault Municipal Airport and which was trisected by two highways. The city of Faribault, by ordinance, established two "safety zones" near the airport runway which encompassed the plaintiff's land. Zone A consisted of an area just beyond the airport runway which was equal in length to two-thirds the length of the runway. In this zone permitted uses included agriculture, horticulture, cemeteries, and the like, but commercial development was prohibited as well as above ground structural uses. Zone B was located just beyond Zone A and extended for a distance equal to the length of one-third the runway length. In this zone, height of structures was limited, population density was limited so as not to exceed 15 persons per acre, and lots were required to be at least three acres in size.

The Minnesota Supreme Court first set forth the standard it generally uses to determine the validity of a zoning ordinance:

> "... the decision of the United States Supreme Court in *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), established that the right to use property as one wishes is subject to and limited by the proper exercise of the police power in the regulation of land use, and such regulation does not constitute a compensable taking unless it deprives the property of all reasonable use. Accordingly, we have repeatedly upheld zoning ordinances and other land use restrictions against allegations of unconstitutional taking, even where the value of the property declined significantly as a result of the restrictions." 292 N.W.2d at 257. (Footnotes omitted.)

The court then set forth a different standard for zoning ordinances designed to benefit a particular governmental enterprise (*i. e.* "enterprise" zoning) rather than to effectuate a comprehensive plan for the orderly development of land use:

> "We believe, however, that not all zoning regulations are comparable. The cases discussed so far have involved ordinances designed to effect a comprehensive plan. There is believed to be a reciprocal benefit and burden accruing to all landowners from the planned and orderly development of land use.
>
> * * * * * *
>
> "We hold that where land use regulations, such as the airport zoning ordinance here, are designed to benefit a specific public or governmental enterprise, there must be compensation to landowners whose property has suffered a substantial and measurable decline in market value as a result of the regulations.
>
> "We do not hold that every landowner who is in some way limited or inconven-

ienced by such regulation is entitled to compensation." 292 N.W.2d at 258-259. (Footnotes omitted.)

The Minnesota Supreme Court then held that the plaintiff landowners were entitled to an injunction against enforcement of the zoning ordinance and that the City of Faribault would have the option of repealing the ordinance or retaining it and initiating eminent domain proceedings.

We believe it is unnecessary in the instant case to either embrace or reject the approach adopted by the Minnesota Supreme Court in *McShane, supra.* It is unnecessary for us to decide whether or not "enterprise" zoning regulations should be scrutinized differently than other zoning regulations because the instant case, unlike the situation in *McShane, supra,* does not involve enterprise zoning but rather deals with a zoning ordinance which is designed to effectuate a comprehensive zoning plan.

The Minnesota Supreme Court in *McShane, supra,* determined that the zoning ordinance involved therein was intended to specifically benefit the municipal airport operation and to, in effect, appropriate a public easement without compensation. The regulated property was located immediately adjacent to the airport runway, and the zoning ordinance placed the property in restricted "safety zones" in an apparent attempt to accommodate, without compensation, direct and substantial intrusions by aircraft over the regulated property.

Unlike the situation in *McShane, supra,* testimony in the instant case reveals that the nearest part of Mrs. Eck's property to the proposed runway is at a distance of 7,100 feet. Consequently, the zoning ordinance in the instant case does not place severe structural limitations or other safety regulations on Mrs. Eck's property in an attempt to accommodate direct physical intrusions by aircraft flights over her property. Rather, the zoning ordinance, as a part of a comprehensive plan to provide orderly development of property within the city's jurisdiction, merely attempts to prohibit residential development in areas which are undesirable for residential development because of excessive noise levels caused primarily by flying aircraft in the vicinity.

In upholding vertical zoning regulations imposed by an Airport Zoning Board, the Florida Supreme Court in *Harrell's Candy Kitchen, Inc. v. Sarasota-Manatee Airport Authority,* 111 So.2d 439 (Fla.1959), made the following observations concerning the validity of zoning regulations in the vicinity of airports with which we agree:

> "Such regulations not only promote the general welfare of the state and community served but contribute to the proper and orderly development of land areas in the vicinity of airports. Such regulations stabilize values and provide safety to those who use the airport facilities in taking off and landing as well as those living in the vicinity thereof. In many cases this Court has upheld the exercise of the police power by counties and municipalities in the enactment of zoning regulations restricting height, number of stories, size of buildings and other structures, percentage of lots that may be occupied, the size of courts and other spaces, the density of population and the location of buildings and structures and land and water for trade, industry and other purposes. There has been much litigation in the field of zoning, particularly in Florida, and the jurisprudence in that field has been extensively developed. These well settled principles now so firmly established with reference to municipal and county zoning apply equally to airport zoning." 111 So.2d at 443.

*See also, La Salle National Bank v. County of Cook,* 34 Ill.App.3d 264, 340 N.E.2d 79 (Ill.Ct.App.1975).

We conclude that the district court did not err in its determination that the city zoning ordinance involved herein is a valid regulation which effectuates legitimate zoning objectives within the city's police power.

Mrs. Eck also asserts that the zoning ordinance is invalid because it deprives her of all or substantially all reasonable use of her land. She contends that since 1977 her farming operation has been unsuccessful

and that her indebtedness has increased to an amount exceeding $101,000.

Although Mrs. Eck's property is currently zoned for agricultural use, there is undisputed evidence in the record that the city's current zoning guidelines would also permit commercial and industrial use of Mrs. Eck's property. Nevertheless, in her application Mrs. Eck only requested a zoning change to allow single family residential use, and she did not seek commercial or industrial zoning for her property.

Mrs. Eck testified that for agricultural purposes 126 acres of her land had a value of $500 per acre and that the remaining 24 acres of pastureland had a value of $200 per acre. She also testified, in part, as follows:

> "Q. Okay, how long have you, or you with your children, carried on an agricultural use of the land in the south half of Section six?
>
> "A. Since 1957.
>
> "Q. And if I followed your testimony, everything went pretty well up until 1977 with you, is that right?
>
> "A. You're right."

The record also contains testimony by Mrs. Eck which reveals that factors other than the nonsuitability of her property for agricultural use may be the cause of her self-asserted farm operation failures since 1977 and of her increasing indebtedness. She testified that during 1976 she transferred 25 acres of her property to her son as a gift and that, at the same time, she assumed liability on a loan made by Production Credit Association to her son which she explained as follows:

> "Q. And at the same time did you not assume a debt to the Production Credit Association?
>
> "A. Yes, sir.
>
> "Q. Of over ninety thousand dollars?
>
> "A. Yes, sir.
>
> "Q. That debt had been money he borrowed from Production Credit Association for a hog operation?
>
> "A. Yes, sir.
>
> "Q. Has any of that money been repaid to you?
>
> "A. No, sir.
>
> "Q. Was that a gift also to your son Donovan?
>
> "A. Yes.
>
> "Q. And when you state that you now owe over one hundred one thousand dollars, that is the increase of this money that you gave to your son Donovan, borrowed from PCA, is it not?
>
> "A. Yes, sir.
>
> "Q. And before that transaction, actually you had a credit balance with PCA?
>
> "A. In 19—
>
> "Q. '76?
>
> "A. '76, yes.
>
> "Q. You had paid up—you had been able to pay up all the loans you had and actually had a credit balance?
>
> "A. That is right."

The record also contains relevant evidence that the soil quality of Mrs. Eck's property would produce average or above average grain yields in comparison with other agricultural property in Burleigh County.

■ The district court determined that the current agricultural zoning of Mrs. Eck's property permitted her to make appropriate and reasonable use of the land and, accordingly, that the zoning ordinance did not deprive her of substantially all reasonable use of her property. We conclude that the district court's findings in this regard are supported by the evidence and are not clearly erroneous.

*Farm Operation Evidence*

■ Mrs. Eck asserts that the district court erred in refusing to admit certain evidence relating to the income and expenses of her farming operation. The offered evidence was in the form of an exhibit which purported to show farm income and expenses for the years 1977 through 1980. The City objected to the introduction of this evidence on the following grounds:

> "If the Court please, we object to exhibit 13, which purports to be statements of farm income and expenses for the years 1977, '78, '79, and '80 for the reason

that there is no foundation, hearsay, irrelevant.

"I would point out in connection with the objection that it purports to cover only the operation of the southwest quarter of six, and it appears from the testimony in the record at this time that this is an attempt to segregate only a portion of a total farm operation.

"The evidence indicates that she owns the whole south half of six, as well as rented land. It also purports to segregate only part of the farm operations, to-wit: the cropping and ignores any raising of cattle which the record shows.

"Further on the grounds that the testimony at this time shows that she is—even the farming operation on part of the total operation is being conducted by a son. There is no foundation to show anything about their relation shares or things or what portion this is, and so we would on that basis object to 13."

In sustaining the city's objection, the district court made the following statement:

"Mr. Zuger's objection went to the fact that it covers one quarter out of what the Court knows apparently to be at least roughly a half section with outside matters included of a farming operation. That is how the objection ran, plus it doesn't reflect your son's income even off of this particular quarter or anything else."

We conclude that the district court did not abuse its discretion in refusing to admit this exhibit because it failed to provide financial data reflecting the entire farm operation.

*Landowner's Property Value Testimony*

Mrs. Eck asserts that the district court erred in refusing to allow her to testify as to the value of her property for residential purposes. It is unnecessary for this Court to determine whether or not Mrs. Eck should have been allowed to testify in this regard because, under the circumstances of this case, the failure to admit such evidence could not constitute prejudicial error.

It is well settled that a zoning ordinance is not invalid merely because it prohibits the highest or best use of the property. *Goldblatt v. Town of Hempstead, New York*, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962); *Eck v. City of Bismarck*, 283 N.W.2d 193 (N.D.1979). In view of the determination that agriculture was a reasonable use for Mrs. Eck's property the validity of the zoning ordinance would not have been affected even though we assume that Mrs. Eck would have testified, and the evidence would have established, that the highest and best use of her property was for residential development.

In accordance with the views expressed in this opinion, the judgment of the district court is affirmed.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.